**SEALED**
**FILED**

2020 JUN 10 P 3:31

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

January 2019 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES RONALD GREEN, JR. (1),<br>MELINDA ELIZABETH GREEN (2),<br><br>Defendants. | Case No. **20 CR 1566 DMS**<br><br>I N D I C T M E N T<br><br>Title 18, U.S.C., Sec. 371 - Conspiracy;<br>Title 18, U.S.C., Sec. 1343 – Wire Fraud;<br>Title 42, U.S.C., Sec. 1320a-7b(b)(2)(A) –<br>Payment of Kickbacks in Connection with a<br>Federal Health Care Program; Title 18,<br>U.S.C., Sec. 2 – Aiding and Abetting;<br>Title 18, U.S.C., Secs. 982(a)(7)<br>and 982(b) – Criminal Forfeiture |

The grand jury charges, at all times material to this indictment:

### Background Allegations

**A.    TRICARE Program**

1.    TRICARE was a health care insurance program of the United States Department of Defense. TRICARE provided civilian health benefits for U.S. military personnel, military retirees, and military dependents all around the world. The TRICARE program provided medical coverage for uniformed service members including those who were active duty and reservists and their families, survivors and former spouses ("TRICARE beneficiaries").

2.    In order to pay a claim for medical benefits, TRICARE required that the item or service billed must be medically necessary, properly prescribed by a licensed physician and actually provided to a TRICARE beneficiary.

3.    TRICARE had strict regulations regarding the use of telemedicine as a method of treating TRICARE patients. TRICARE did not consider telemedicine a substitute for

KL:nlv(1):San Diego:6/10/20

face-to-face health care except in certain limited situations. One proper use of a telemedicine "visit" was when the patient could not meet a medical professional face to face because they were in a remote location. Another proper use of a telemedicine "visit" was a situation in which there was a need for continuity of care with a specific medical professional. In addition, the originating site where the beneficiary was located for the telemedicine "visit" must be a location where an authorized TRICARE provider normally provided medical services to TRICARE beneficiaries. A patient's home was not a proper originating site for a telemedicine "visit." In addition, proper telemedicine service required the use of some form of video technology in which the patient and the medical professional could see each other and visually interact with each other.

4. Pharmacy compounding was a practice in which a licensed pharmacist or a licensed physician combined, mixed or altered ingredients of a drug to create a medication tailored to the particular needs of an individual patient.

5. TRICARE contracted with Express Scripts, Incorporated (ESI) to administer pharmacy benefits for the TRICARE program, specifically for the processing and payment of claims.

6. TRICARE was a "health care benefit program . . . affecting commerce" as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320-7b(f).

### B. The Defendants and Related Entities

7. Brookhaven Specialty Pharmacy, LLC ("Brookhaven") was a corporation organized under the laws of the State of Oklahoma that purportedly provided pharmaceutical drugs and compounded medications to TRICARE beneficiaries.

8. John Frohrip (charged elsewhere), a resident of the State of Oklahoma, was a principal of Brookhaven.

9. NHS Pharma, Inc. ("NHS"), was a corporation organized under the laws of the State of California that purported to provide pharmacy billing services for Brookhaven.

2

10. NHS Pharma Sales Inc., ("NHSPS"), was a corporation organized under the laws of the State of California that purported to provide sales marketing services for Brookhaven.

11. Defendant **MELINDA ELIZABETH GREEN**, a resident of San Diego County, California, was the Chief Executive Officer of NHS and a corporate officer of NHSPS.

12. Defendant **CHARLES RONALD GREEN, JR.**, a resident of San Diego County, California, was the Secretary and Chief Financial Officer of NHS and the Chief Financial Officer of NHSPS.

13. SKR Services and Ventures, LLC. ("SKR") was a corporation organized under the laws of the State of Florida that purported to market compound medications to TRICARE beneficiaries.

14. Med Health Quest Inc. ("MHQ") was a corporation organized under the laws of the State of Texas that purported to market compounded medications to TRICARE beneficiaries.

15. Senthil Ramamurthy (charged elsewhere), a resident of the State of Florida and later the States of Texas and California, was an owner of SKR and MHQ.

16. MHQ Ventures, LLC ("MHQV") was a corporation organized under the laws of the State of Texas that purported to market compounded medications to TRICARE beneficiaries.

17. Anthony Mauzy (charged elsewhere), a resident of the State of Texas, was an owner and operator of MHQV.

18. Comfort Medical Center, LLC ("CMC"), a corporation organized under the laws of the State of Florida, was a medical clinic located in the Southern District of Florida that purported to provide medical services to TRICARE beneficiaries.

19. Jennifer John Carbon (charged elsewhere), a resident of the Southern District of Florida, was an owner and officer of CMC.

20. Valley Internal Medicine, Geriatric and Diabetic Center, P.A., ("Valley Internal Medicine"), a corporation organized under the laws of the State of Texas, was a medical practice that purported to provide medical services to Medicare and TRICARE beneficiaries.

21. Mangala Ramamurthy, M.D. (charged elsewhere), a resident of the State of Texas, was a physician licensed to practice medicine in the State of Texas and a director of Valley Internal Medicine.

22. Uddin Enterprises, Inc. was a corporation organized under the laws of the State of New York located in the Southern District of Florida that purported to market compound medications to TRICARE beneficiaries.

23. Asif Uddin (charged elsewhere), a resident of the State of New York, was the owner and operator of Uddin Enterprises, Inc.

## Count 1
## Conspiracy
## (18 U.S.C. § 371)

24. Paragraphs 1 through 23 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

25. From on or about March 18, 2014, through on or about June 29, 2015, within the Southern District of California, and elsewhere, defendants **RONALD CHARLES GREEN, JR.** and **MELINDA ELIZABETH GREEN**, did knowingly and intentionally, conspire with each other, with Senthil Ramamurthy, John Frohrip, Anthony Mauzy, Mangala Ramamurthy, Asif Uddin, Jennifer John Carbon, and with others to:

   a. defraud the United States by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Defense in its administration and oversight of the TRICARE program;

   b. knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined by Title 18,

United States Code, Section 24(b), that is TRICARE, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in violation of Title 18, United States Code, Section 1347;

      c.    knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, in violation of Title 18, United States Code, Section 1343;

      d.    knowingly and willfully solicit and receive remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by wire transfer, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, TRICARE, in violation of Title 42, United States Code, Section 1320a-7b(b)(1)(A); and

      e.    knowingly and willfully offer to pay and pay any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by wire transfer, to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a Federal health care program, that is, TRICARE, in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A).

## PURPOSE OF THE CONSPIRACY

26. It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) paying and receiving kickbacks in exchange for the referral of TRICARE beneficiaries and their

accompanying prescriptions to compounding pharmacies, without regard to any medical necessity for the prescribed compounded medications; (b) paying kickbacks to health care providers and telemedicine companies in exchange for ordering and arranging for the ordering of compounded medicines for TRICARE beneficiaries, without regard for any medical necessity for the prescribed compounded medications; (c) submitting and causing the submission of millions of dollars in false and fraudulent claims for compounded medications to TRICARE via interstate wire communication; (d) concealing the fraudulent nature of the claims submitted to TRICARE, and the receipt of and transfer of kickback proceeds; and (e) diverting millions of dollars in kickback proceeds for their personal use and benefit, the use and benefit of others and to further the conspiracy.

## **MANNER AND MEANS**

27. The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

a. **CHARLES RONALD GREEN, JR.** and **MELINDA ELIZABETH GREEN,** through NHSPS, negotiated and executed an agreement with compounding pharmacies, including Brookhaven, whereby Brookhaven agreed to pay NHSPS as much as 55% of the amount adjudicated by insurance payers, including TRICARE, for each prescription for compounded medications referred to Brookhaven through NHSPS regardless of whether the beneficiary needed the compounded medication.

b. **CHARLES RONALD GREEN, JR.** and **MELINDA ELIZABETH GREEN,** through NHS, negotiated and executed an agreement with Senthil Ramamurthy, through SKR, to pay 50% of the amount adjudicated by insurance payers, including TRICARE, for each prescription for compounded medications referred to Brookhaven by SKR through NHS.

c. **CHARLES RONALD GREEN, JR.** and **MELINDA ELIZABETH GREEN,** through NHS, coordinated and directed the development and dissemination of pre-printed prescriptions for expensive compounded medications, for which TRICARE

reimbursed up to tens of thousands of dollars per prescription or more, that were designed to maximize reimbursement from TRICARE and to increase the amount of kickbacks paid by Brookhaven to them and to their co-conspirators, and not with regard to any actual medical need.

   d. Senthil Ramamurthy, through SKR and Med Health Quest, offered and paid kickbacks to Anthony Mauzy, Asif Uddin, Jennifer John Carbon, and others in exchange for the identification, recruitment and referral of TRICARE beneficiaries that Senthil Ramamurthy in turn referred to Brookhaven through NHS.

   e. Anthony Mauzy, and Asif Uddin, through MHQV and Uddin Enterprises respectively, offered and paid kickbacks to one or more individuals in exchange for the recruitment and referral of TRICARE beneficiaries that they in turn referred to Brookhaven through Senthil Ramamurthy.

   f. Senthil Ramamurthy, through SKR and Med Health Quest, offered and paid kickbacks to Jennifer John Carbon, who was paid in exchange for the ordering and arranging for ordering compounded medications for TRICARE beneficiaries.

   g. Mangala Ramamurthy, M.D., through Valley Internal Medicine, ratified compounded medication prescriptions for TRICARE beneficiaries, knowing that Brookhaven and other compounding pharmacies would fill those prescriptions, and in turn pay kickbacks to Senthil Ramamurthy for those prescriptions, and without regard to whether the beneficiary needed the compounded medication.

   h. Senthil Ramamurthy, through SKR and Med Health Quest, solicited and received kickbacks from Brookhaven, which were paid through NHSPS, in exchange for recruiting and referring TRICARE beneficiaries to Brookhaven, knowing that it would bill TRICARE for compounded medications purportedly dispensed to the recruited TRICARE beneficiaries.

   i. **CHARLES RONALD GREEN, JR., MELINDA ELIZABETH GREEN,** John Frohrip, Senthil Ramamurthy, Anthony Mauzy, Asif Uddin, Jennifer John Carbon, Mangala Ramamurthy and others caused TRICARE to pay Brookhaven millions

of dollars in reimbursements for compounded medications purportedly dispensed to TRICARE beneficiaries.

j. As the result of these claims, TRICARE made payments to Brookhaven in at least the approximate amount of $4.5 million. Brookhaven in turn paid Senthil Ramamurthy, through NHSPS, approximately $2.5 million, via interstate wire communications.

k. **CHARLES RONALD GREEN, JR., MELINDA ELIZABETH GREEN,** Senthil Ramamurthy, Anthony Mauzy, Asif Uddin, Jennifer John Carbon, Mangala Ramamurthy, M.D. and others used the kickbacks received from Brookhaven to benefit themselves and others, and to further the scheme.

## OVERT ACTS

28. In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one co-conspirator committed and caused to be committed, in the Southern District of California, and elsewhere, at least one of the following overt acts, among others:

a. On or about March 18, 2014, **CHARLES RONALD GREEN, JR.** filed Articles of Incorporation for NHS with the Secretary of State for the State of California.

b. On or about August 11, 2014, **CHARLES RONALD GREEN, JR.** e-mailed to John Frohrip an NHSPS Marketing Services Agreement.

c. On or about September 2, 2014, **CHARLES RONALD GREEN, JR.** filed Articles of Incorporation for NHSPS with the Secretary of State for the State of California.

d. On or about September 9, 2014, **CHARLES RONALD GREEN, JR.** and **MELINDA ELIZABETH GREEN** opened a business checking account with an account number ending in "2308" the name of NHSPS at Wells Fargo Bank, N.A.

e. On or about December 4, 2014, **CHARLES RONALD GREEN, JR.** through NHS, and Senthil Ramamurthy, through SKR, executed a Marketing Company Agreement.

f. On or about February 18, 2015, Senthil Ramamurthy e-mailed Jennifer John Carbon a pre-printed prescription pad directing Carbon to prescribe "metabolic support and #4 pain creme."

g. On or about February 18, 2015, **CHARLES RONALD GREEN, JR.** e-mailed John Frohrip an invoice requesting payment in exchange for SKR's referral of TRICARE beneficiaries to Brookhaven.

h. On or about March 5, 2015, **CHARLES RONALD GREEN, JR.** e-mailed an invoice requesting payment in exchange for SKR's referral of TRICARE beneficiaries to Brookhaven.

i. On or about March 16, 2015, **CHARLES RONALD GREEN, JR.** and **MELINDA ELIZABETH GREEN,** through NHSPS, wired the approximate sum of $155,663 to SKR as payment in exchange for SKR's referral of TRICARE beneficiaries to Brookhaven.

j. On or about April 3, 2015, **CHARLES RONALD GREEN, JR.** e-mailed John Frohrip an invoice requesting payment in exchange for SKR's referral of TRICARE beneficiaries to Brookhaven.

k. On or about April 10, 2015, **CHARLES RONALD GREEN, JR.** and **MELINDA ELIZABETH GREEN,** through NHSPS, wired the approximate sum of $488,622 to SKR as payment in exchange for SKR's referral of TRICARE beneficiaries to Brookhaven.

l. On or about April 13, 2015, **CHARLES RONALD GREEN, JR.** and **MELINDA ELIZABETH GREEN,** through NHSPS, wired the approximate sum of $196,163 to SKR as payment in exchange for SKR's referral of TRICARE beneficiaries to Brookhaven.

m. On or about May 5, 2015, **CHARLES RONALD GREEN, JR.** e-mailed John Frohrip an NHS April Rep Report and accompanying spreadsheet requesting payment in exchange for SKR's referral of TRICARE beneficiaries to Brookhaven.

n.  On or about May 12, 2015, **CHARLES RONALD GREEN, JR.** and **MELINDA GREEN,** through NHSPS, wired the approximate sum $550,000 to SKR as payment in exchange for SKR's referral of TRICARE beneficiaries to Brookhaven.

o.  On or about May 13, 2015, Brookhaven wired the approximate sum of $460,000 to **CHARLES RONALD GREEN, JR.** and **MELINDA ELIZABETH GREEN,** through NHS, in exchange for the referral of TRICARE beneficiaries to Brookhaven by SKR through NHSPS.

p.  On or about May 14, 2015, Brookhaven wired the approximate sum of $90,000 to **CHARLES RONALD GREEN, JR.** and **MELINDA ELIZABETH GREEN,** through NHS, in exchange for the referral of TRICARE beneficiaries to Brookhaven by SKR through NHSPS.

q.  On or about June 3, 2015, **CHARLES RONALD GREEN, JR.** e-mailed John Frohrip an invoice requesting payment in exchange for SKR's referral of TRICARE beneficiaries to Brookhaven.

r.  On or about June 11, 2015, **CHARLES RONALD GREEN, JR.** and **MELINDA ELIZABETH GREEN,** through NHSPS, wired the approximate sum of $198,790 to SKR, in exchange for SKR's referral of TRICARE beneficiaries to Brookhaven.

s.  On or about June 15, 2015, **CHARLES RONALD GREEN, JR.,** e-mailed John Frohrip regarding an audit and payment to "Dr. Rama Account."

t.  On or about June 16, 2015, **CHARLES RONALD GREEN, JR.** and **MELINDA ELIZABETH GREEN,** through NHSPS, wired the approximate sum of $57,279 to SKR in exchange for SKR's referral of TRICARE beneficiaries to Brookhaven.

u.  On or about June 29, 2015, **CHARLES RONALD GREEN, JR.** and **MELINDA ELIZABETH GREEN** caused TRICARE to pay false and fraudulent claims to Brookhaven in the approximate sum of $110,859.

All in violation of Title 18, United States Code, Section 371.

## Counts 2-5
## Wire Fraud
### (18 U.S.C. § 1343, § 2)

29. Paragraphs 1 through 23 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

30. From on or about March 18, 2014, through on or about June 29, 2015, within the Southern District of California and elsewhere, defendants **CHARLES RONALD GREEN, JR.** and **MELINDA ELIZABETH GREEN** knowingly and with the intent to defraud, devised, and intended to devise, a material scheme to defraud TRICARE and to obtain money and property from TRICARE by means of materially false and fraudulent pretenses, representations, and promises.

31. The scheme to defraud is more fully described in Paragraphs 26 and 28, which are re-alleged and incorporated by reference as though fully set forth herein.

32. For the purpose of executing and attempting to execute the above-described scheme, on or about the dates set forth as to each count below, in the Southern District of California and elsewhere, defendants **CHARLES RONALD GREEN, JR.** and **MELINDA ELIZABETH GREEN** transmitted and caused to be transmitted in interstate commerce, the writings, signs, signals, pictures, and sounds set forth below:

| Count | Approx. Date | Sender | Recipient | Wire Communication |
|---|---|---|---|---|
| 2 | 6/11/2015 | NHSPS | SKR | Wire transmitting the approximate sum of $198,790 |
| 3 | 6/15/2015 | CHARLES RONALD GREEN | John Frohrip | E-mail discussing payment to SKR in exchange for referral of TRICARE beneficiaries |
| 4 | 6/16/2015 | NHSPS | SKR | Wire transmitting the approximate sum of $57,279 |
| 5 | 6/29/2015 | ESI | Brookhaven | Wire transmitting the approximate sum of $110,859 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

### Counts 6-7
### Payment of Kickbacks in Connection with a Federal Health Care Program
### (42 U.S.C. § 1320a-7b(b)(2)(A), § 2)

33.   Paragraphs 1 through 23 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

34.   On or about the dates enumerated below, within the Southern District of California and elsewhere, the defendants **CHARLES RONALD GREEN, JR.** and **MELINDA GREEN** did knowingly and willfully offer to pay and pay remunerations, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, as set forth below, to a person, to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, TRICARE:

| Count | Approx. Date of Kickback Payment | Approx. Amt. of Kickback Payment |
|---|---|---|
| 6 | 6/11/2015 | $198,790 |
| 7 | 6/16/2015 | $57,279 |

All in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A), and Title 18, United States Code, Section 2.

### CRIMINAL FORFEITURE
### (18 U.S.C. § 982(a)(7))

35.   The allegations of this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of certain property in which defendants **CHARLES RONALD GREEN, JR.** and **MELINDA ELIZABETH GREEN,** have an interest.

36.   Upon conviction of a "Federal health care offense," as defined by Title 18, United States Code, Section 24, as alleged in this Indictment, the defendant so convicted shall forfeit to the United States of America, pursuant to Title 18, United States Code,

1  Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or
2  indirectly, from gross proceeds traceable to the commission of the offense.

3      37.    The property to be forfeited includes, but is not limited to:

4          i. the real property located at 1943 Idaho Ave, Escondido, California,
5          92027, legally described as:

Assessor's Parcel No. 234-420-07-00
Real property in the City of Escondido, County of San Diego, State of California, described as follows:

Lot "A", OF THE Resubdivision of Block 273, of the Rancho Rincon Del Diablo, in the County of San Diego, State of California, according to Map thereof No. 1519, filed in the Office of the County Recorder of San Diego County, January 21, 1913.

        ii. A money judgment equal to the amount of gross proceeds traceable to the commission of the offenses.

38. If any of the above described forfeitable property, as a result of any act or omission of defendants: (a) cannot be located upon the exercise of due diligence; (b) has been transferred or sold to, or deposited with, a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of defendants up to the value of the forfeitable property described above.

All pursuant to Title 18, United States Code, Sections 982(a)(7) and 982(b).

DATED: June 10, 2020.

A TRUE BILL.

_____
Foreperson

ROBERT S. BREWER, JR.
United States Attorney

By: _____
KEVIN J. LARSEN
Assistant U.S. Attorney