RANDY S. GROSSMAN
Acting United States Attorney
VALERIE H. CHU
Assistant United States Attorney
California Bar No. 241709
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
(619) 546-6750
Valerie.chu@usdoj.gov

Attorneys for United States of America

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 20-CR-1566-DMS |
| v. | **PLEA AGREEMENT** |
| CHARLES RONALD GREEN, JR., | |
| Defendant. | |

IT IS HEREBY AGREED between the plaintiff, UNITED STATES OF AMERICA, through its counsel, Randy S. Grossman, Acting United States Attorney, and Kevin J. Larsen and Valerie H. Chu, Assistant United States Attorneys, and defendant CHARLES RONALD GREEN, Jr. with the advice and consent of Ryan Lapine and David Wiechert, counsel for Defendant, as follows:

## I

## THE PLEA

Defendant agrees to waive indictment and to plead guilty to Counts 1 and 2 of a Superseding Information charging Conspiracy in violation of Title 18, U.S.C. § 371, and Health Care Fraud in violation of 18 U.S.C. § 1347. Defendant knowingly and voluntarily waives any rights and defenses he may have under the statute of limitations applicable to the charged offense.

In exchange for Defendant's concessions, the Government agrees to: (1) move to dismiss the charges in the original indictment without prejudice when Defendant is sentenced, (2) not prosecute Defendant thereafter on such dismissed charges, and (3) not bring any additional criminal charges against Defendant for conduct outlined in the "Factual Basis" section of this plea agreement, unless Defendant breaches the plea agreement or the guilty plea entered pursuant to this plea agreement is set aside for any reason. If Defendant breaches this agreement or the guilty plea is set aside, section XII below shall apply. Defendant expressly waives all constitutional and statutory defenses to the reinstatement or initiation of any charges that the United States did not bring pursuant to this agreement.

In addition, the attached Financial Penalties Addendum shall govern forfeiture, restitution, and the fine in this case.

This plea agreement is part of a "package" disposition with co-defendant MELINDA ELIZABETH GREEN as set forth in Section VI.E below.[1]

## II

## NATURE OF THE OFFENSE

### A.   ELEMENTS EXPLAINED

Defendant understands that the offenses to which he is pleading guilty have the following elements:

Conspiracy [18 U.S.C. § 371]

1. Defendant and at least one other person agreed to commit an offense as charged in the Information;

2. Defendant became a member of the conspiracy knowing at least one of its objects and intending to help accomplish it; and

---

[1] Any reference to "Defendants" in this document means co-defendants CHARLES RONALD GREEN *and* MELINDA ELIZABETH GREEN.

*Plea Agreement*

2

Def's initials _____

3.  one of the members of the conspiracy performed at least one overt act during the timeframe of the charged conspiracy, for the purpose of carrying out the conspiracy.

Health Care Fraud [18 U.S.C. § 1347]

1.  Defendant and others executed or attempted to execute a scheme to defraud a health-care benefit program, or to obtain money or property owned by, or under the custody or control of, a health-care benefit program, by means of false or fraudulent pretenses, representations, or promises;

2.  The statements made or facts omitted as part of the scheme were material;

3.  Defendant acted knowingly and willfully, that is, he is aware of the act and did not act through ignorance, mistake, or accident, and with knowledge that the act was unlawful;

4.  Defendant did so in connection with the delivery of or payment for health-care benefits, items, or services.

**B.    FACTUAL BASIS: ELEMENTS UNDERSTOOD AND ADMITTED**

The Defendant has fully discussed the facts of this case with defense counsel. Defendant has committed each element of the crimes and admits that there is a factual basis for this guilty plea. The following facts are true and undisputed:

1.  Beginning on or about March 18, 2014 and continuing through at least April 2019, Defendants conspired and agreed with each other, and with others, to execute a scheme and artifice to defraud health care benefit programs (TRICARE and Medicare); and to pay and receive health care kickbacks.

//

//

//

*Plea Agreement*

Def's initials _____

Relevant Companies

2. During the period of the charged conspiracy, Defendants were owners or officers of companies as follows:

    a. NHS PHARMA, INC. (NHS) – Melinda GREEN was the Chief Executive Officer (CEO).  Charles Ronald GREEN became the CEO and Director.

    b. NHS PHARMA SALES, INC. (NHS PHARMA) – Melinda GREEN was a Director.  Charles Ronald GREEN was the CEO.

    c. FOCUS DME BILLING INC. (FOCUS) -- Melinda GREEN was a Director/Officer.  Charles Ronald GREEN was the CEO and a Director.

    d. FOCUS DME MANAGEMENT INC. (FOCUS MGMT) -- Melinda GREEN was a Director/Officer.  Charles Ronald GREEN was the CEO and a Director.

    e. PRV MEDICAL SUPPLY INC. (PRV) – Melinda GREEN was the CEO. PRV applied to become a supplier of Durable Medical Equipment (DME) to Medicare patients, and its ownership changed to Melinda GREEN on September 1, 2018.

    f. EZ LIFE MEDICAL SUPPLY, INC. (EZ LIFE) – Charles Ronald GREEN was the CEO and Director. EZ LIFE applied to become a supplier of DME to Medicare patients, and its ownership changed on June 1, 2018 to Charles Ronald GREEN.

    g. ZEE & ASSOCIATES INC. (ZEE) – Charles Ronald GREEN was the Agent for Process.  ZEE applied to become a supplier of DME to Medicare patients, and its ownership changed on June 15, 2019 to Charles Ronald GREEN.

//

//

h. CHOICE MEDICAL PRODUCTS, INC. (CHOICE) - Charles Ronald GREEN was the CEO and President. CHOICE applied to become a supplier of DME to Medicare patients.

3. Brookhaven Specialty Pharmacy, LLC. ("Brookhaven") was a compounding pharmacy located in the Northern District of Oklahoma.

4. SKR Services and Ventures LLC (SKR) was a Florida company with its principal place of business in the Southern District of Florida that purportedly marketed compounded medications dispensed by Brookhaven and other compounding pharmacies.

5. Red Rock Operations, LLC ("Red Rock") was a warehousing and packaging company located in the Northern District of Georgia.

6. Square One, LLC ("Square One") was an insurance eligibility screening company located in the Northern District of Georgia.

7. TRICARE is a federal health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that provides civilian health benefits for military personnel, military retirees, and military dependents.

8. Medicare is a federal health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that provides health benefits to persons who are sixty-five years of age or older, or disabled.  Providers who submit claims to Medicare for reimbursement agree and certify that all claims they submit comply with all Medicare rules and regulations, including that the claim not violate the Anti-Kickback Statute.

TRICARE fraud scheme

9. Beginning on or about May 12, 2014 and continuing through at least on or about June 29, 2015, within the Southern District of California, and elsewhere, Defendants conspired and agreed with each other and with others to execute a

scheme to defraud involving the submission of false and fraudulent claims to TRICARE for expensive and medically unnecessary pain creams, scar creams and multi-vitamins (collectively, "compounded medications"), which were billed through Brookhaven, and other pharmacies.

10. In furtherance of the conspiracy, Defendants and others caused compounding pharmacies, including Brookhaven, to make false and fraudulent claims to TRICARE and other payers for medically unnecessary compounded medications that were dispensed pursuant to false and fraudulent prescriptions obtained through a system of illegal health care kickbacks ("the compounding fraud scheme").

11. Brookhaven and other compounding pharmacies paid Defendant millions of dollars in illegal kickbacks and other remuneration in exchange for the referral of the false and fraudulent prescriptions for compounded medications belonging to TRICARE beneficiaries. Specifically, Brookhaven and other pharmacies paid companies controlled by the Defendant approximately 55% of the amount received from health care benefit plans including TRICARE, for each prescription referred to the pharmacies by Defendant. Defendant and others in turn paid a portion of this sum as a kickback to SKR and other so-called "marketing" organizations, in exchange for, and as a further inducement to those organizations to, refer prescriptions for compounded medications for beneficiaries of health care benefit programs including TRICARE. TRICARE and other payers often reimbursed compounding pharmacies including Brookhaven thousands of dollars for a 30-day supply of a compounded pain or scar cream for one beneficiary.

12. In furtherance of the compounding fraud scheme, Defendant and others developed compounded medication formulations for the primary purpose of

inflating the amount of money TRICARE would reimburse to Brookhaven, and to correspondingly increase the amount of kickbacks and remuneration that NHS and its affiliated marketers would receive.  Defendant and others executed the compounding fraud scheme, for example, by using billing data to run "test claims" designed to identify high paying components which the Defendant and others in turn assembled into expensive and medically unnecessary compounded medication formulations paid for by TRICARE and other health care benefit plans.  Once identified and assembled, Defendant and others dispensed the prescription pads to marketing organizations including SKR that subsequently caused telemedicine physicians to ratify them irrespective of medical necessity. Additionally, Defendant and others perpetuated the compounding fraud scheme by falsely waiving insurance co-payment collection requirements.  Defendant admits that causing the submission of claims to TRICARE for compounded medications that were engineered for maximum reimbursement and not based on medical necessity constitutes a material misrepresentation to TRICARE as to the validity of the claims.

13. The Defendant admits and agrees that his participation in the charged conspiracy resulted in TRICARE's payment of false and fraudulent claims to Brookhaven and other compounding pharmacies of at least $4.5 million dollars.

Medicare Fraud Scheme

14. As a continued part of the conspiracy, between no later than June 1, 2018 and up to at least April 2019, Defendants conspired and agreed with each other and with others to execute a scheme to defraud Medicare through the submission of false and fraudulent claims for expensive durable medical equipment ("DME") which were induced through a system of illegal kickbacks ("the DME fraud scheme").

15. In furtherance of the DME fraud scheme, Defendants caused DME companies under their ownership or control (EZ LIFE, PRV, ZEE, and CHOICE) to make false and fraudulent claims on Medicare.  Defendant and others executed the DME fraud scheme by purchasing "completed doctors' orders" ("D.O.'s") from various "marketers" for Medicare beneficiaries, which included a prescription signed by a doctor certifying that the beneficiary received an exam that met Medicare's requirements and that the DME was medically necessary.

16. Defendant admits that submission of claims based on the purchased D.O.'s described above constitutes a material misrepresentation to Medicare that the claim complied with all Medicare regulations, including that the DME provider had not violated the Anti-Kickback Statute.

17. In an attempt to disguise the DME fraud scheme from detection, Defendants and their co-conspirators entered into sham "marketing" and other contracts that concealed the pay-per-Order arrangement.

18. In addition to purchasing D.O.s in furtherance of making false and fraudulent claims on behalf of DME companies they owned or controlled, Defendants in some instances brokered D.O.s by re-selling them at a markup to other DME companies, through their other companies (NHS and NHS SALES).

19. Over the course of the DME fraud scheme, Defendants agree that they, through their various entities, submitted false and fraudulent claims to Medicare as follows:

   a. from September 4, 2018 through April 4, 2019 (when it was placed on payment suspension), PRV submitted claims to Medicare totaling $40,560,360.43 for DME and was paid by Medicare $21,147,325.85;

//

//

b. from June 1, 2018 through April 9, 2019, E.Z. Life submitted claims to Medicare totaling $84,323,467.09 for DME and was paid by Medicare $47,717,790.16;

c. from June 15, 2019 through June 29, 2020, CHOICE submitted claims to Medicare for orthotics totaling $496,843.09 and was paid by Medicare $272,920.66; and

d. from June 15, 2019 through June 29, 2020, ZEE submitted claims to Medicare for orthotics totaling $1,552,105.62 and was paid by Medicare $777,873.02.

Claims and Overt Acts

20. Defendants agree that the following constitute overt acts in furtherance of the conspiracy as well as acts in execution of the scheme and artifice to defraud TRICARE and Medicare:

a. On or about May 8, 2015, in the Southern District of California, Defendants and others caused the submission of a false and fraudulent claim to TRICARE in the approximate sum of $14,178 for Baclofen Powder.

b. On or about November 15, 2018, Defendants and others caused PRV Medical to submit a medically unnecessary claim to Medicare in the amount of $2,005.08, for a back brace, and a right-side shoulder-elbow-wrist-hand orthosis for Medicare patient M.G.

c. On or about January 18, 2019, Defendants and others caused E.Z. Life to submit a medically unnecessary claim to Medicare in the amount of $3,703.10, for a back brace, left and right knee braces, and left and right suspension sleeves for Medicare patient D.B.

d. On or about February 4, 2019, Melinda GREEN emailed two co-conspirators the prices she charged for D.O.'s for various types of DME products.

e. On or about March 14, 2019, Charles Ronald GREEN prepared and submitted an invoice from NHS Pharma that concealed that NHS Pharma was being paid a per-brace kickback for selling D.O.'s, but claimed instead to be charging for a "TV Campaign," at a price of $35,000, a quantity of 716 for "Landing Pages," and $6,928.71 for processing hours.

The foregoing facts do not describe all the details of the conspiracy, or the Defendant's complete knowledge of the scheme, but are offered for the limited purpose of establishing a sufficient factual basis to support Defendant's plea of guilty to the charges of conspiracy and health care fraud.

## III

## PENALTIES

Defendant understands that Conspiracy in violation of 18 U.S.C. § 371, carries the following penalties:

A. a maximum 5 years in prison;

B. a maximum $250,000 fine, or twice the gross gain or loss derived from the offense;

C. a mandatory special assessment of $100 per count; and

D. a term of supervised release of up to 3 years. Failure to comply with any condition of supervised release may result in revocation of supervised release, requiring Defendant to serve in prison, upon revocation, all or part of the statutory maximum term of supervised release.

Defendant understands that Health Care Fraud in violation of 18 U.S.C. §1347, carries the following penalties:

A. a maximum 10 years in prison;

B. a maximum $250,000 fine, or twice the gross gain or loss derived from the offense;

C. a mandatory special assessment of $100 per count; and

D. a term of supervised release of up to 3 years. Failure to comply with any condition of supervised release may result in revocation of supervised release, requiring Defendant to serve in prison, upon revocation, all or part of the statutory maximum term of supervised release.

As to each offense, Defendant understands and acknowledges that any sentence imposed may include an order from the Court pursuant to 18 U.S.C. § 3663A that Defendant make mandatory restitution to the victims of the offense of conviction, or the estate(s) of the victims(s). Defendant understands that the Court shall also order, if agreed to by the parties in this plea agreement, restitution to persons other than the victims of the offense of conviction; however, in such an instance, restitution to those persons, similar to restitution to victims of the offense of conviction, will be limited to the overall amount of restitution ordered by the Court.

Defendant also understands and acknowledges that any sentence imposed may include an order of forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

## IV

## DEFENDANT'S WAIVER OF TRIAL RIGHTS

Defendant understands that this guilty plea waives the right to:

A.    Continue to plead not guilty and require the United States to prove the elements of the crime beyond a reasonable doubt;

B.    A speedy and public trial by jury;

C.    The assistance of counsel at all stages of trial;

D.    Confront and cross-examine adverse witnesses;

E.      Testify and present evidence and to have witnesses testify on behalf of Defendant; and,

F.      Not testify or have any adverse inferences drawn from the failure to testify.

Defendant knowingly and voluntarily waives any rights and defenses Defendant may have under the Excessive Fines Clause of the Eighth Amendment to the United States Constitution to the forfeiture of property in this proceeding or any related civil proceeding.

V

## DEFENDANT ACKNOWLEDGES NO PRETRIAL RIGHT TO BE PROVIDED WITH IMPEACHMENT AND AFFIRMATIVE DEFENSE INFORMATION

The United States represents that any information establishing the factual innocence of Defendant known to the undersigned prosecutors in this case has been turned over to Defendant.  The United States will continue to provide such information establishing the factual innocence of Defendant.

Defendant understands that if this case proceeded to trial, the United States would be required to provide impeachment information relating to any informants or other witnesses. In addition, if Defendant raised an affirmative defense, the United States would be required to provide information in its possession that supports such a defense. Defendant acknowledges, however, that by pleading guilty, Defendant will not be provided this information, if any, and Defendant also waives the right to this information. Finally, Defendant agrees not to attempt to withdraw the guilty plea or to file a collateral attack based on the existence of this information.

//

//

//

//

*Plea Agreement*                                                12                            Def's initials _____

# VI

## DEFENDANT'S REPRESENTATION THAT GUILTY
## PLEA IS KNOWING AND VOLUNTARY

Defendant represents that:

A. Defendant has had a full opportunity to discuss all the facts and circumstances of this case with defense counsel and has a clear understanding of the charges and the consequences of this plea. Defendant understands that, by pleading guilty, Defendant may be giving up, and rendered ineligible to receive, valuable government benefits and civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant further understands that the conviction in this case may subject Defendant to various collateral consequences, including but not limited to deportation, removal or other adverse immigration consequences; revocation of probation, parole, or supervised release in another case; debarment from government contracting; and suspension or revocation of a professional license, as well as civil and administrative liability, none of which will serve as grounds to withdraw Defendant's guilty plea.

B. No one has made any promises or offered any rewards in return for this guilty plea, other than those contained in this agreement or otherwise disclosed to the Court.

C. No one has threatened Defendant or Defendant's family to induce this guilty plea.

D. Defendant is pleading guilty because in truth and in fact Defendant is guilty and for no other reason.

E. The disposition contemplated by this agreement is part of a "package" disposition with codefendant MELINDA ELIZABETH GREEN. If any defendant in the package fails to perform or breaches any part of their agreement, no defendant can withdraw their guilty plea, but the Government is relieved from and not bound by any terms in any agreements in the package.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VII

## AGREEMENT LIMITED TO THE U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF CALIFORNIA

The parties acknowledge that the United States Attorney's Office for the Southern District of California (the "Office"), on a best efforts basis, has sought to coordinate with the other United States Attorney's Offices, and the Health Care Fraud Unit of the Department of Justice's Criminal Division's Fraud Section, in respect of this Agreement. While the Office cannot bind any other federal, state or local prosecuting, administrative, or regulatory authorities, the parties anticipate that the efforts of the Office to bring this Agreement to the attention of other offices will limit the likelihood of any other prosecutions on these facts, and the Office has no information indicating that any other Department of Justice entity intends to seek prosecution of Defendant separate and apart from this Agreement. Further, the United States will bring this Agreement to the attention of other authorities if requested by Defendant.

## VIII

## APPLICABILITY OF SENTENCING GUIDELINES

Defendant understands the sentence imposed will be based on the factors set forth in 18 U.S.C. § 3553(a). Defendant understands further that in imposing the sentence, the sentencing judge must consult the United States Sentencing Guidelines (Guidelines) and take them into account. Defendant has discussed the Guidelines with defense counsel and understands that the Guidelines are only advisory, not mandatory, and the Court may impose a sentence more severe or less severe than otherwise applicable under the Guidelines, up to the maximum in the statute of conviction. Defendant understands further that the sentence cannot be determined until a presentence report has been prepared by the U.S. Probation Office and both defense counsel and the United States have had an opportunity to review and challenge the presentence report. Nothing in this plea agreement

*Plea Agreement*

14

Def's initials ____

shall be construed as limiting the United States' duty to provide complete and accurate facts to the district court and the U.S. Probation Office.

## IX

## SENTENCE IS WITHIN SOLE DISCRETION OF JUDGE

This plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c) (1) (B). Defendant understands that the sentence is within the sole discretion of the sentencing judge. The United States has not made and will not make any representation as to what sentence Defendant will receive. Defendant understands that the sentencing judge may impose the maximum sentence provided by statute, and is also aware that any estimate of the probable sentence by defense counsel is a prediction, not a promise, and is not binding on the Court. Likewise, the recommendation made by the United States is not binding on the Court, and it is uncertain at this time what Defendant's sentence will be. Defendant also has been advised and understands that if the sentencing judge does not follow any of the parties' sentencing recommendations, Defendant nevertheless has no right to withdraw her plea.

## X

## PARTIES' SENTENCING RECOMMENDATIONS

### A.      SENTENCING GUIDELINE CALCULATIONS

Although the parties understand that the Guidelines are only advisory and just one factor the Court will consider under 18 U.S.C. § 3553(a) in imposing a sentence, the parties will jointly recommend the following Base Offense Level, Specific Offense Characteristics, Adjustments, and Departures:

1. Base Offense Level [USSG §2B1.1]                              6
2. Actual Loss More than $65 million                          +24
   [USSG §2B1.1(b)(1)(M)]

3.  Loss to Gov't Health Care Program More than $20 million          +4

[USSG §2B1.1(b)(7)]

4.  Acceptance of Responsibility [USSG § 3E1.1]                      -3

5.  Package Disposition / Cooperation                               -2

[USSG §5K1.1]

**Total Adjusted Offense Level                                        29**

## B.    ACCEPTANCE OF RESPONSIBILITY

Notwithstanding paragraph A above, the United States will not be obligated to recommend any adjustment for Acceptance of Responsibility under U.S.S.G. §§ 3E1.1 or 8C2.5 if Defendant engages in conduct inconsistent with acceptance of responsibility including, but not limited to, the following:

1.    Fails to truthfully admit a complete factual basis as stated in the plea at the time the plea is entered, or falsely denies, or makes a statement inconsistent with, the factual basis set forth in this agreement;

2.    Falsely denies prior criminal conduct or convictions;

3.    Is untruthful with the United States, the Court or probation officer;

4.    Materially breaches this plea agreement in any way; or

5.    Contests or assists any third party in contesting the forfeiture of property(ies) seized in connection with this case, and any property(ies) to which the defendant has agreed to forfeit as set forth in the attached forfeiture addendum.

## C.    FURTHER ADJUSTMENTS AND SENTENCE REDUCTIONS INCLUDING THOSE UNDER 18 U.S.C. § 3553

The parties agree that the United States may argue for upward adjustments for Sophisticated Means [USSG §2B1.1(b)(10)(C)] and Aggravated Role [USSG § 3B1.1]. Defendant is free to oppose.

*Plea Agreement*

Def's initials _____

The parties agree that Defendant may request or recommend additional downward adjustments, departures, including criminal history departures under USSG § 4A1.3, or sentence reductions under 18 U.S.C. § 3553. The United States may oppose any downward adjustments, departures and sentence reductions not set forth in Section X, paragraph A above.

**D.     NO AGREEMENT AS TO CRIMINAL HISTORY CATEGORY**

The United States does not take a position as to Defendant's Criminal History Category.  However, counsel for the Defendant submits that Defendant's Criminal History Category ("CHC") is CHC I.

**E.     "FACTUAL BASIS" AND "RELEVANT CONDUCT"**

The parties agree that the facts in the "factual basis" section of this agreement are true, and may be considered as "relevant conduct" under USSG § 1B1.3 and as the nature and circumstances of the offense under 18 U.S.C. § 3553(a)(1).

**F.     PARTIES' RECOMMENDATIONS REGARDING CUSTODY**

Defendant acknowledges that the United States will recommend a sentence within the advisory Guidelines range.  However, the parties agree that Defendant is able to argue for any sentence, including probation, without objection from the United States that such argument is precluded by this Agreement.

**G.     SUPERVISED RELEASE**

If the Court imposes a term of supervised release, the parties agree that Defendant will not seek to reduce or terminate early the term of supervised release until Defendant has served at least 2/3 of the term.

**H.     FINANCIAL CONDITION**

Defendant admits and agrees that based on their joint criminal activity from the commission of the offenses, Conspiracy, in violation of 18 U.S.C. § 371, and Health Care Fraud, in violation of 18 U.S.C. § 1347, Defendant and co-defendant Melinda Elizabeth

Green directly obtained the gross criminal proceeds and property traceable thereto listed below as specific assets subject to forfeiture in **(a)-(h), (i)-(j), (k)-(s)**, and the Real Property Located at 1943 Idaho Avenue, Escondido, California 92027. Defendant agrees to forfeit the specific assets listed in **(a)-(h), (i)-(j), (k)-(s)** which Defendant agrees constitute gross criminal proceeds and property traceable thereto that are subject to forfeiture under 18 U.S.C. § 982(a)(7). Defendant agrees to forfeit the Real Property Located at 1943 Idaho Avenue, Escondido, California 92027 which Defendant agrees constitute, in part, gross criminal proceeds and property traceable thereto that are subject to forfeiture under 18 U.S.C. § 982(a)(7), and, in part, as a substitute asset which Defendant agrees to forfeit.

Defendant admits and agrees that Defendant, and co-defendant Melinda Elizabeth Green, together, and on their own, and by directing others, acted with the actual intent to hinder, delay, or defraud any creditor, and to hide and conceal these gross criminal proceeds from seizure and forfeiture, by transferring and depositing these gross criminal proceeds in the following amounts and into the following Fidelity Investments Accounts in the Greenshaven Trust listed below in **(a)-(h)**. Defendant agrees to forfeit the following funds listed as specific assets which Defendant agrees constitute gross criminal proceeds that are subject to forfeiture under 18 U.S.C. § 982(a)(7): **(a)** $4,388,112.64 IN U.S. CURRENCY SEIZED FROM FIDELITY INVESTMENTS ACCOUNT NUMBER XX0472; **(b)** $2,134,352.70 IN U.S. CURRENCY SEIZED FROM FIDELITY INVESTMENTS ACCOUNT NUMBER XX0473; **(c)** $3,896,247.90 IN U.S. CURRENCY SEIZED FROM FIDELITY INVESTMENTS ACCOUNT NUMBER XX0474; **(d)** $544,162.17 IN U.S. CURRENCY SEIZED FROM FIDELITY INVESTMENTS ACCOUNT NUMBER XX0475; **(e)** $837,395.44 IN U.S. CURRENCY SEIZED FROM FIDELITY INVESTMENTS ACCOUNT NUMBER XX0476; **(f)** $218,544.33 IN U.S. CURRENCY SEIZED FROM FIDELITY INVESTMENTS ACCOUNT NUMBER XX0477;

**(g)** $292,635.83 IN U.S. CURRENCY SEIZED FROM FIDELITY INVESTMENTS ACCOUNT NUMBER XX4433; **(h)** $950.20 IN U.S. CURRENCY SEIZED FROM FIDELITY INVESTMENTS ACOUNT NUMBER XX2582;

Defendant agrees that the transfer of the gross criminal proceeds to the Fidelity Investment Accounts in the Greenshaven Trust listed as **(a)-(h),** were not made in an arms-length transaction with <u>any</u> of the Beneficiaries and the Trustees, and that Defendant and co-defendant Melinda Elizabeth Green, were not provided and did not receive anything of value or other consideration in exchange for the transfers from <u>any</u> of the Beneficiaries and the Trustees. Defendant agrees that all such Beneficiaries and the Trustees of the Greenshaven Trust are not bona fide purchasers for value. Defendant agrees that Defendant and co-defendant Melinda Elizabeth Green retained possession and control of the gross criminal proceeds after the transfers were made to the Greenshaven Trust.

Defendant further admits and agrees that Defendant and co-defendant Melinda Elizabeth Green used, in part, gross criminal proceeds to fund the purchase and construction of the Real Property Located at 1943 Idaho Avenue, Escondido, California 92027 ("Escondido Real Property"), less an amount up to $400,000 which shall not be forfeited and which shall be deducted only after payment of costs of seizure and liquidation as provided in paragraph (ix.) of the Financial Addendum.

Defendant admits and agrees that Defendant, and co-defendant Melinda Elizabeth Green, together, and on their own, and by directing others, acted with the actual intent to hinder, delay, and defraud any creditor, and to hide and conceal the Escondido Real Property from seizure and forfeiture, by transferring the Escondido Real Property into the Greenshaven Trust.

Defendant further agrees that the transfer of the Escondido Real Property into the Greenshaven Trust was not made in an arms-length transaction with <u>any</u> of the Beneficiaries and the Trustees, and that Defendant and co-defendant Melinda Elizabeth Green, were not

provided and did not receive anything of value or other consideration in exchange for the transfer from <u>any</u> of the Beneficiaries and the Trustees. Defendant further agrees that all such Beneficiaries and the Trustees of the Greenshaven Trust are not bona fide purchasers for value. Defendant and co-defendant Melinda Elizabeth Green retained possession and control of the Escondido Real Property after the transfer was made to the Greenshaven Trust.

Defendant further admits and agrees that Defendant and co-defendant Melinda Elizabeth Green used gross criminal proceeds to purchase the vehicles listed below as **(i)-(k)**. Defendant agrees to forfeit the following vehicles which Defendant agrees constitute gross criminal proceeds that are subject to forfeiture under 18 U.S.C. § 982(a)(7): **(i)** 2018 PORSCHE PANAMERA, CALIFORNIA LICENSE PLATE NUMBER 8GTX359, VEHICLE IDENTIFICATION NUMBER WP0AB2A76JL1355537; **(j)** 2019 FORD LARIAT 4X2 F-150, FLORIDA LICENSE PLATE NUMBER LEJQ98, VEHICLE IDENTIFICATION NUMBER 1FTEW1C51KFB110044; **(k)** 2019 AUDI Q8 PREMIUM, FLORIDA LICENSE PLATE NUMBER LCII94, VEHICLE IDENTIFICATION NUMBER WA1AVAF10KD010335. Defendant admits and agrees that for any of the three (3) vehicles listed as **(i)-(k)** that have been transferred to the Greenshaven Trust, Defendant, and co-defendant Melinda Elizabeth Green, together, and on their own, and by directing others, acted with the actual intent to hinder, delay, and defraud any creditor, and to hide and conceal the vehicles from seizure and forfeiture, by transferring the vehicles into the Greenshaven Trust.

Defendant further agrees that the transfer of any of the three (3) vehicles listed as **(i)-(k)** into the Greenshaven Trust were not made in an arms-length transaction with <u>any</u> of the Beneficiaries and the Trustees, and that Defendant and co-defendant Melinda Elizabeth Green, were not provided and did not receive anything of value or other consideration in exchange for the transfer from <u>any</u> of the Beneficiaries and the Trustees. Defendant further

*Plea Agreement*

20

Def's initials

agrees that all such Beneficiaries and the Trustees of the Greenshaven Trust are not bona fide purchasers for value. Defendant and co-defendant Melinda Elizabeth Green retained possession and control of all of the vehicles after any such transfer was made to the Greenshaven Trust.

Defendant admits and agrees that for any of the assets listed below in **(l)-(t)** that have been transferred to the Greenshaven Trust, Defendant, and co-defendant Melinda Elizabeth Green, together, and on their own, and by directing others, acted with the actual intent to hinder, delay, or defraud any creditor, and to hide and conceal these gross criminal proceeds from seizure and forfeiture, by transferring and depositing these gross criminal proceeds in the following amounts and into the following accounts as listed below in **(l)-(t)**. Defendant agrees to forfeit the following specific assets which Defendant agrees constitute gross criminal proceeds that are subject to forfeiture under 18 U.S.C. § 982(a)(7): **(l)** $49,812.40 IN U.S. CURRENCY SEIZED FROM WELLS FARGO BANK ACCOUNT NUMBER XX3071; **(m)** $1,016,738.02 IN U.S. CURRENCY SEIZED FROM WELLS FARGO BANK ACCOUNT NUMBER XX1430; **(n)** $15,448.64 IN U.S. CURRENCY SEIZED FROM WELLS FARGO BANK ACOUNT NUMBER XX0706; **(o)** $559.15 IN U.S. CURRENCY SEIZED FROM WELLS FARGO BANK ACCOUNT NUMBER XX0557; **(p)** $142,580.46 IN U.S. CURRENCY SEIZED FROM WELLS FARGO BANK ACOUNT NUMBER XX9816; **(q)** $60,961.48 IN U.S. CURRENCY SEIZED FROM WELLS FARGO BANK ACOUNT NUMBER XX6408; **(r)** $2,058,060.72 IN U.S. CURRENCY SEIZED FROM WELLS FARGO BANK ACCOUNT NUMBER XX7253; **(s)** $1,022.12 IN U.S. CURRENCY SEIZED FROM WELLS FARGO BANK ACOUNT NUMBER XX8049; **(t)** $4,983.50 IN U.S. CURRENCY SEIZED FROM BANK OF AMERICA ACOUNT NUMBER XX5609.

Defendant agrees that attached Financial Penalties Addendum supplies additional forfeiture, restitution, and the fine provisions in this case.

# XI

# DEFENDANT WAIVES APPEAL AND COLLATERAL ATTACK

## A.    WAIVER OF RIGHT TO APPEAL CONVICTION AND SENTENCE

In exchange for the concessions by the United States in this plea agreement, Defendant waives (gives up) all rights to appeal and to collaterally attack every aspect of the conviction and sentence, including any forfeiture order up to $110,000,000 and any restitution order up to $110,000,000, and any fine order up to $110,000,000. This waiver includes, but is not limited to, any argument that the statute of conviction or Defendant's prosecution is unconstitutional and any argument that the facts of this case do not constitute the crime charged. The only exceptions are: (1) Defendant may appeal a custodial sentence above the high end of the guideline range recommended by the United States at sentencing; and (2) Defendant may collaterally attack the conviction or sentence on the basis that Defendant received ineffective assistance of counsel.

## B.    OBJECTIONS TO UNITED STATES' RECOMMENDATION

If Defendant believes the recommendation by the United States is not in accord with this plea agreement, Defendant will object at the time of sentencing; otherwise the objection will be deemed waived.  If Defendant appeals, the United States may support on appeal the sentence, forfeiture order, fine, and restitution order actually imposed.

# XII

# BREACH OF THE PLEA AGREEMENT

## A.    MATERIAL BREACH OF PLEA AGREEMENT

Defendant acknowledges, understands, and agrees that if Defendant violates or fails to perform any of Defendant's obligations under this agreement, such violation or failure to perform will constitute a material breach of this agreement. Defendant acknowledges, understands, and agrees further that the following non-exhaustive list of conduct by Defendant unquestionably constitutes a material breach of this plea agreement:

1.    Failing to plead guilty pursuant to this agreement;

2.    Withdrawing the guilty plea or attempting to withdraw the guilty plea;

3.    Failing to fully accept responsibility as established in Section X, paragraph B, above;

4.    Failing to appear in court;

5.    Failing to abide by any lawful court order related to this case;

6.    Appealing or collaterally attacking the sentence or conviction in violation of Section XI of this plea agreement; or

7.    Engaging in additional criminal conduct from the time of initial appearance until the time of sentencing.

**B.    CONSEQUENCES OF BREACH**

If Defendant breaches this plea agreement, Defendant will not be able to enforce any provisions, and the United States will be relieved of all its obligations under this plea agreement. For example, the United States may proceed to sentencing but recommend a different sentence than what it agreed to recommend above. Or the United States may pursue any charges including those that were dismissed, promised to be dismissed, or not filed as a result of this agreement (Defendant agrees that any statute of limitations relating to such charges is tolled indefinitely as of the date all parties have signed this agreement; Defendant also waives any double jeopardy defense to such charges).

In addition, the United States may move to set aside Defendant's guilty plea. Defendant may not withdraw the guilty plea based on the United States' pursuit of remedies for Defendant's breach.

If Defendant breaches this plea agreement: (i) any statements made by Defendant, under oath, at the guilty plea hearing (before either a Magistrate Judge or a District Judge); (ii) the factual basis statement in Section II.B in this agreement; and (iii) any evidence derived from such statements, are admissible against Defendant in any prosecution of, or

*Plea Agreement*                                        23                                   Def's initials

any action against, Defendant. This includes the prosecution of the charge(s) that is the subject of this plea agreement or any charge(s) that the prosecution agreed to dismiss or not file as part of this agreement, but later pursues because of a breach by the Defendant. Additionally, Defendant knowingly, voluntarily, and intelligently waives any argument that the statements and any evidence derived from the statements should be suppressed, cannot be used by the United States, or are inadmissible under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, and any other federal rule.

## XIII

## CONTENTS AND MODIFICATION OF AGREEMENT

This plea agreement embodies the entire agreement between the parties and supersedes any other agreement, written or oral. No modification of this plea agreement shall be effective unless in writing signed by all parties.

## XIV

## DEFENDANT AND COUNSEL FULLY UNDERSTAND AGREEMENT

By signing this agreement, Defendant certifies that Defendant has read it.  Defendant has discussed the terms of this agreement with defense counsel and fully understands its meaning and effect.

//

//

//

//

//

//

//

*Plea Agreement*

Def's initials _____

1

## XV

2

## DEFENDANT SATISFIED WITH COUNSEL

3         Defendant has consulted with counsel and is satisfied with counsel's representation.

4  This is Defendant's independent opinion, and her counsel did not advise Defendant about

5  what to say in this regard.

6                                          RANDY S. GROSSMAN
                                           Acting United States Attorney
7

8  9/24/2021                              _Valerie H Chu_____
                                          _____
9  DATED                                   VALERIE H. CHU
                                           Assistant U.S. Attorney
10
    9/24/2021
11  _____
    DATED                                  DAVID J. RAWLS
12                                          Assistant U.S. Attorney

13

14 FOR DEFENDANT

15  9-24-2021                              _____
16  DATED                                   RYAN LAPINE
                                           Counsel for Defendant
17

18  9-24-2021                              _____
19  DATED                                   DAVID WIECHERT
                                           Counsel for Defendant
20

21 IN ADDITION TO THE FOREGOING PROVISIONS TO WHICH I AGREE, I SWEAR
   UNDER PENALTY OF PERJURY THAT THE FACTS IN THE "FACTUAL BASIS"
22 SECTION ABOVE ARE TRUE.

23

24  9-24-2021                             _____
25  DATED                                  CHARLES RONALD GREEN, JR.
                                          Defendant
26

27

28

*Plea Agreement*                          25                           Def's initials _____