KNOX RICKSEN LLP
Thomas E. Fraysse (SBN 104436)
Maisie C. Sokolove (SBN 239665)
Taylor T. Steele (SBN 304443)
Benjamin J. Fuchs (SBN 320793)
2033 North Main Street, Suite 340
Walnut Creek, CA 94596
Telephone: (925) 433-2500
Facsimile: (925) 433-2505

NIXON PEABODY LLP
Charles M. Dyke (SBN 183900)
Ross M. Petty (SBN 166366)
One Embarcadero Center, 32nd Floor
San Francisco, CA 94111-3600
Tel: (415) 984-8200
Fax: (844) 540-4098

Attorneys for Third-Party Victim
ILWU-PMA WELFARE PLAN

BUSH GOTTLIEB, A LAW CORPORATION
Erica Deutsch (SBN 204427)
801 N. Brand Blvd, Suite 950
Glendale, CA 91203
Telephone: (818) 973-3200
Facsimile: (818) 973-3201

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiffs,<br><br>v.<br><br>CHARLES RONALD GREEN, JR (1),<br>MELINDA ELIZABETH GREEN (2)<br><br>Defendants. | Case No.  3:20CR1566-DMS<br><br>**DECLARATION OF DONALD LOCHABAY, JR. IN SUPPORT OF VICTIM IMPACT STATEMENT OF ILWU-PMA WELFARE PLAN**<br><br>Judge: Hon. Dana M. Sabraw |

KNOX RICKSEN LLP
ATTORNEYS AT LAW
2033 N. MAIN STREET, SUITE 340
WALNUT CREEK, CALIFORNIA 94596

TO THE HONORABLE JUDGE SABRAW:

I, Donald Lochabay, Jr., declare as follows:

1.        My name is Donald E. Lochabay, Jr.  I have been retained by the ILWU-PMA Welfare Plan ("Plan"), and I have worked at Donald W. DeGroff's directions to quantify pharmacy claim net payments made on behalf of Plan members for compound drug claims.  I am over 18 years old and could testify to the facts set out herein if called upon to do so.

**Summary of Qualifications as a Pharmacy Claim Subject Matter Expert (SME)**

2.        I am currently employed as a Managing Director of Alvarez & Marsal Disputes and Investigations, LLC.  I have been employed in that capacity since 2007.  I am a Certified Management Accountant and Certified Valuation Analyst, and I have a Bachelor of Business Administration degree from Baylor University.  My resume at **Attachment A** provides an overview of my experience and credentials.  Over the past 35 years, I have developed and evaluated numerous damages and remedies claims, including those related to health care reimbursement.  I am knowledgeable about health care claims and related data sets including membership, eligibility, fee schedule, claims adjudication, and claims payment files.  Over my career, I have evaluated health care data for several states, including data related to Medicaid programs, employee retirement systems, state-owned hospitals, and other programs.  In addition, I have evaluated health care data for many of the largest private payors in the United States.  I have worked with data sets ranging from a few thousand records to more than 1 billion records.  These data sets include hospital, physician, pharmacy, and other types of claims.

**Materials Reviewed**

3.        I reviewed an affidavit submitted by Melinda Green on April 12, 2024, in which Ms. Green purportedly identified claims submitted by her company, NHS Pharma, Inc. ("NHS"), for reimbursement by the Plan.[1]

4.        I have also reviewed declarations from Donald W. DeGroff provided in support of this matter, which included claim volumes and Fraud, Waste, and Abuse ("FWA") red flags identified in the Plan's compound prescription claims files submitted for reimbursement to the Plan through

---

[1] Affidavit of Melinda Green, submitted 4/12/24, paragraph 3.

**DECLARATION OF DONALD LOCHABAY, JR. IN SUPPORT OF VICTIM IMPACT STATEMENT OF ILWU-PMA WELFARE PLAN**
*USA v. Charles Ronald Green, Jr, Melinda Elizabeth Green (USDC Southern District of California #: 20CR01566-DMS)*

KNOX RICKSEN LLP
ATTORNEYS AT LAW
2033 N. MAIN STREET, SUITE 340
WALNUT CREEK, CALIFORNIA 94596

OptumRx.[2]

5. I also reviewed compound pharmacy claims data, and its associated data dictionary, maintained by OptumRx, the pharmacy benefit manager ("PBM"), for ILWU-PMA Welfare Plan members and their dependents. The Plan's compound prescription claims data ("claims data") was comprised of over 36,000 compound prescriptions covering fill dates between August 1. 2015 through September 30, 2016 (**See Exhibit 1**).

6. My project team loaded these claim files into a structured database environment for easier analysis. I have reviewed the claims data fields to understand their content, and I have filtered the claims data to determine the net amount paid, if any, for compound prescription claims at-issue in this matter. Scenarios in this Declaration are limited to claims filled between August 1, 2015 through September 30, 2016.

7. The claims data contains multiple payment fields, including details on the prescription ingredient costs, dispensing fees, patient copays, and the total amounts paid by the Plan and PBM (**See Exhibit 2**). The Plan Paid Amount ("CLM_CLR_DUE_AMT") field represents the amount paid by the Plan to the PBM as reimbursement for a paid claim. The next field, PBM Paid Amount ("CLM_APP_DUE_AMT"), details the payment made from the PBM to the pharmacy. In total, the PBM Paid Amount represents 99.98% of the amount paid by the Plan to its PBM.[3]

8. I have also filtered the claims data to account for claims reversals in my quantification. Reversals were identified in the claims data where the field CLAIM_STATUS_ID was "X." The reversing claim versions were linked on the fields CLAIM_NUMBER, CLAIM_SEQ_NUMBER, and FILLED_DATE for claim versions where the field CLAIM_STATUS_ID was "P" (Paid). Payment amount fields are negative on claim reversals, and

[2] Declarations of Donald W. DeGroff in support of Victim Impact Statement of ILWU-PMA Welfare Plan: 11/16/23, 11/30/23, 2/20/24, and 5/10/24. I understand that counsel for the Plan asked Mr. DeGroff to identify the claims in the Plan's compound prescription claims files with a "paid" claim status. A review of the claims files indicated that many "paid" claims were subsequently reversed. After matching the reversing claim version to its paid claim version, I was able to determine the net amount paid, if any, on pertinent claims. The net claim payment amounts presented in this declaration supersede any Plan payments quantified in Mr. DeGroff's declarations.
[3] PBM Paid Amount percentage of 99.98% was calculated as follows for compound prescriptions filled between 8/1/15 and 9/30/16: $97,539,075 (PBM Paid Amount in the claims data) divided by $97,554,563 (Plan Paid Amount in the claims data). See Exhibit 1 for additional detail.

**DECLARATION OF DONALD LOCHABAY, JR. IN SUPPORT OF VICTIM IMPACT STATEMENT OF ILWU-PMA WELFARE PLAN**
*USA v. Charles Ronald Green, Jr, Melinda Elizabeth Green (USDC Southern District of California # 3:20CR01566-DMS)*

these amounts offset the amounts in the initial paid version of the claim.   The impact of the reversal matching is to remove claims where the pharmacy ultimately received no reimbursement and to account for pricing adjustments that occur in the claims adjudication process. (See **Exhibit 3** for a claims reversal example).

### Summary of Opinions

9.      Mr. DeGroff and counsel for the Plan asked that I quantify the net amount paid by the Plan for the compound prescription claims submitted to its PBM between August 1, 2015 and September 30, 2016.  This Declaration includes net payment quantification under three scenarios. Each scenario quantifies the compound prescription claims paid by the PBM to various pharmacies and by the Plan to the PBM.  The "PHARMACY_NCPDP_ID" and "PHARMACY_NAME" fields in the claims data were used to identify the pharmacies.[4]

10.      Several pharmacies submitted claims to the Plan through its PBM.[5]  I have quantified Plan payments under three scenarios corresponding to different pharmacy/NCPDP combinations.

11.      **Scenario 1 - Melinda Green NHS Claim Quantification:**   In her April 12, 2024 affidavit, Melinda Green reviewed the NHS portal and identified "claims submitted by NHS on behalf of pharmacy customers for claims reimbursement by ILWU."[6] Ms. Green's Affidavit identified claims from two pharmacies, Mesa and Lifetime Value.  For these claims, Ms. Green included the "committed amount," which corresponds to the amount submitted on behalf of the Plan's pharmacy customers rather than the amount collected for the submitted claims.[7]  While Ms. Green did not identify any inclusion or exclusion criteria used in the identification of the ILWU submitted claims, she identified only claims prescribed by Dr. Ali Ahmad with prescriptions filled from July 10, 2015 to November 2, 2015.  See the submitted pharmacy amounts included in Ms. Green's affidavit below.

---

[4] The "NCPDP Provider Identification" number (National Counsel for Prescription Drug Programs Provider ID) is a unique 7-digit national identifier used by pharmacies in their interactions with pharmacy payers and claims processors.  The "Pharmacy Name" is associated with NCPDP retained within OptumRx's RxClaim system.
[5] Affidavit of Melinda Green, submitted April 12, 2024, paragraph 3.
[6] Affidavit of Melinda Green, submitted April 12, 2024, paragraph 3.
[7] Affidavit of Melinda Green, submitted April 12, 2024, paragraphs 4-5.

KNOX RICKSEN LLP
ATTORNEYS AT LAW
2033 N. MAIN STREET, SUITE 340
WALNUT CREEK, CALIFORNIA 94596

| Submitted Claims Identified in Green Affidavit | | |
|---|---|---|
| **Pharmacy Name** | **Distinct Claims** | **Committed Amount** |
| Mesa Pharmacy | 226 | $ 3,449,138.68 |
| Lifetime Value Pharmacy | 184 | 2,851,409.73 |
| **Total** | **410** | **$ 6,300,548.41** |

12.     To evaluate Ms. Green's identified claims, my team linked the 410 claims identified in the exhibits to Ms. Green's affidavit to the OptumRx claims data. [8] This allowed me to determine that the PBM reversed payments on 141 of the claims identified by Ms. Green.  I also noted that the amounts paid by the PBM to the Pharmacy and from the Plan to the PBM were often lower than the submitted amounts included in Ms. Green's affidavit.

13.     Based on my evaluation, the Mesa and Lifetime Value pharmacies were paid $2,457,944 of the $6,300,548 included for claims identified by Ms. Green.  Further, the Plan paid the PBM $2,455,150 on claims included in Ms. Green's affidavit.  See paid totals by pharmacy below as well as **Exhibit 4** for additional detail.

| Scenario 1:  Net Payments for Claims Identified in Green Affidavit | | |
|---|---|---|
| **Green Exhibit/Pharmacy** | **PBM Net Paid Amount (CLM APP DUE AMT)** | **Plan Net Paid Amount (CLM CLR DUE AMT)** |
| Green Exhibit A (MESA Pharmacy Claims) | $ 1,228,208.52 | 1,228,208.52 |
| Green Exhibit B (Lifetime Value Pharmacy Claims) | $ 1,229,735.83 | 1,226,941.52 |
| **Total Net Payment** | **$ 2,457,944.35** | **$ 2,455,150.04** |

---

[8] Pharmacies included in Scenario 1 were identified with the following names and NCPDPs in the claims data:
   a)   MESA PHARMACY VII (NCPDP:  5630771)
   b)   LIFETIME VALUE PHARMACY (NCPDP:  5648083)
   c)   LVRX III (NCPDP:  5648083)

**DECLARATION OF DONALD LOCHABAY, JR. IN SUPPORT OF VICTIM IMPACT STATEMENT OF ILWU-PMA WELFARE PLAN**
*USA v. Charles Ronald Green, Jr, Melinda Elizabeth Green (USDC Southern District of California # 3:20CR01566-DMS)*

KNOX RICKSEN LLP
ATTORNEYS AT LAW
2033 N. MAIN STREET, SUITE 340
WALNUT CREEK, CALIFORNIA 94596

14.     **Scenario 2 – Paid Claims for Mesa, Lifetime Value, and Roxsan Pharmacies:**
Independent of the representations in Melinda Green's affidavit, I quantified the paid claims for the
Mesa, Lifetime Value, and Roxsan pharmacies for prescriptions filled between August 1, 2015 and
September 30, 2016.[9]  I have quantified both the net amount the pharmacies were paid by the PBM
and the net amount the PBM was paid by the Plan for these claims.

15.     The PBM, OptumRx, paid Mesa, Lifetime Value, and Roxsan pharmacies
$13,352,855 for prescriptions filled between August 1, 2015 and September 30, 2016.  The Plan
paid the PBM $13,365,056 related to the paid claims identified. See quantification of both amounts
below as well as **Exhibit 5** for additional detail.

### Scenario 2:  Net Payments to Select Pharmacies
*(LIFETIME VALUE PHARMACY, LVRX III, MESA PHARMACY VII, ROXSAN PHARMACY, ROXSAN PHARMACY INC)*

|  | PBM Net Paid Amount (CLM APP DUE AMT) | Plan Net Paid Amount (CLM CLR DUE AMT) |
|---|---|---|
| **Total Net Payment** | $         13,352,854.81 | $       13,365,055.77 |

---

[9] Pharmacies included in Scenario 2 were identified with the following names and NCPDPs in the claims data:
a)  MESA PHARMACY VII (NCPDP:  5630771)
b)  LIFETIME VALUE PHARMACY (NCPDP:  5632321)
c)  LIFETIME VALUE PHARMACY (NCPDP:  5648083)
d)  LVRX III (NCPDP:  5648083)
e)  ROXSAN PHARMACY (NCPDP:  0530255)
f)  ROXSAN PHARMACY INC (NCPDP:  5656701)

**DECLARATION OF DONALD LOCHABAY, JR. IN SUPPORT OF VICTIM IMPACT STATEMENT OF ILWU-PMA WELFARE PLAN**
*USA v. Charles Ronald Green, Jr, Melinda Elizabeth Green (USDC Southern District of California # 3:20CR01566-DMS)*

KNOX RICKSEN LLP
ATTORNEYS AT LAW
2033 N. MAIN STREET, SUITE 340
WALNUT CREEK, CALIFORNIA 94596

KNOX RICKSEN LLP
ATTORNEYS AT LAW
2033 N. MAIN STREET, SUITE 340
WALNUT CREEK, CALIFORNIA 94596

**ILWU Welfare Plan Restitution Claim**
**Scenario 2:  Net Payments to Select Pharmacies**
(LIFETIME VALUE PHARMACY, LVRX III, MESA PHARMACY VII,
ROXSAN PHARMACY, ROXSAN PHARMACY INC)

| Fill Month | # of Claims | PBM Net Paid Amount (CLM APP DUE AMT) | Plan Net Paid Amount (CLM CLR DUE AMT) |
|---|---|---|---|
| 2015-08 | 97 | $          754,607.80 | $          754,607.80 |
| 2015-09 | 69 | 582,422.71 | 582,422.71 |
| 2015-10 | 192 | 2,192,084.33 | 2,186,844.98 |
| 2015-11 | 28 | 417,133.72 | 415,890.62 |
| 2015-12 | 3 | 2,113.98 | 2,108.03 |
| 2016-01 | 3 | 2,116.98 | 2,111.19 |
| 2016-02 | 5 | 3,528.30 | 3,518.65 |
| 2016-03 | 55 | 793,805.02 | 791,440.51 |
| 2016-04 | 72 | 1,092,050.04 | 1,088,795.57 |
| 2016-05 | 121 | 1,502,723.06 | 1,501,707.91 |
| 2016-06 | 179 | 2,098,842.72 | 2,107,548.34 |
| 2016-07 | 92 | 1,054,926.11 | 1,059,279.24 |
| 2016-08 | 289 | 2,787,890.63 | 2,799,591.82 |
| 2016-09 | 52 | 68,609.41 | 69,188.40 |
| **Total** | **1,257** | $      13,352,854.81 | $      13,365,055.77 |

16.     **Scenario 3 – Paid Claims for Mesa, Lifetime Value, Roxsan, and Rx Unlimited Pharmacies:**   Independent of the representations in Melinda Green's affidavit, I quantified the paid claims for the Mesa, Lifetime Value, Roxsan, and Rx Unlimited pharmacies[10] for prescription fill dates between August 1, 2015 and September 30, 2016.

17.     The Plan's PBM paid Mesa, Lifetime Value, Roxsan, and Rx Unlimited pharmacies $46,152,165 for prescriptions between August 1, 2015 and September 30, 2016.  The

_____

[10] Scenario 3 pharmacies identified with the following names and NCPDPs in the claims data:
   a)  MESA PHARMACY VII (NCPDP:  5630771)
   b)  LIFETIME VALUE PHARMACY (NCPDP:  5632321)
   c)  LIFETIME VALUE PHARMACY (NCPDP:  5648083)
   d)  LVRX III (NCPDP:  5648083)
   e)  ROXSAN PHARMACY (NCPDP:  0530255)
   f)  ROXSAN PHARMACY INC (NCPDP:  5656701)
   g)  RX UNLIMITED PHARMACY (NCPDP:  0552554)

**DECLARATION OF DONALD LOCHABAY, JR. IN SUPPORT OF VICTIM IMPACT STATEMENT OF ILWU-PMA WELFARE PLAN**
*USA v. Charles Ronald Green, Jr, Melinda Elizabeth Green (USDC Southern District of California # 3:20CR01566-DMS)*

Plan paid the PBM $46,166,104 for these paid claims.  See quantification of both amounts below as well as **Exhibit 6** for additional detail.

### Scenario 3:  Net Payments to Select Pharmacies

**(LIFETIME VALUE PHARMACY, LVRX III, MESA PHARMACY VII, ROXSAN PHARMACY, ROXSAN PHARMACY INC, RX UNLIMITED PHARMACY)**

|  | PBM Net Paid Amount (CLM APP DUE AMT) | Plan Net Paid Amount (CLM CLR DUE AMT) |
|---|---|---|
| Total Net Payment | $ 46,152,164.63 | $ 46,166,104.19 |

### ILWU Welfare Plan Restitution Claim
### Scenario 3:  Net Payments to Select Pharmacies

**(LIFETIME VALUE PHARMACY, LVRX III, MESA PHARMACY VII, ROXSAN PHARMACY, ROXSAN PHARMACY INC, RX UNLIMITED PHARMACY)**

| Fill Month | # of Claims | PBM Net Paid Amount (CLM APP DUE AMT) | Plan Net Paid Amount (CLM CLR DUE AMT) |
|---|---|---|---|
| 2015-08 | 97 | $ 754,607.80 | $ 754,607.80 |
| 2015-09 | 69 | 582,422.71 | 582,422.71 |
| 2015-10 | 212 | 2,509,356.55 | 2,503,360.26 |
| 2015-11 | 199 | 3,029,061.85 | 3,021,592.80 |
| 2015-12 | 271 | 4,053,631.24 | 4,043,966.99 |
| 2016-01 | 156 | 2,278,634.55 | 2,273,204.74 |
| 2016-02 | 172 | 2,478,826.00 | 2,472,961.52 |
| 2016-03 | 321 | 4,627,874.96 | 4,616,395.37 |
| 2016-04 | 334 | 4,969,417.47 | 4,957,151.24 |
| 2016-05 | 386 | 5,371,573.34 | 5,375,005.99 |
| 2016-06 | 424 | 5,630,774.83 | 5,655,426.28 |
| 2016-07 | 316 | 4,368,190.22 | 4,387,742.02 |
| 2016-08 | 469 | 5,429,183.70 | 5,453,078.07 |
| 2016-09 | 52 | 68,609.41 | 69,188.40 |
| **Total** | **3,478** | **$ 46,152,164.63** | **$ 46,166,104.19** |

18.    **Overview of Findings**:  Below is a summary of the amounts paid by the PBM as

KNOX RICKSEN LLP
ATTORNEYS AT LAW
2033 N. MAIN STREET, SUITE 340
WALNUT CREEK, CALIFORNIA 94596

well as the amounts paid by the Plan under each Scenario for prescriptions filled between August 1, 2015 and September 30, 2016.

| Overview:  Net Payments Under Various Declaration Scenarios | | | |
|---|---|---|---|
| Declaration Scenario | Pharmacies Included | PBM Net Paid Amount (CLM APP DUE AMT) | Plan Net Paid Amount (CLM CLR DUE AMT) |
| Scenario 1 | MESA, LIFETIME VALUE (Specific claims identified in Green Affidavit only - Fill Dates:  August 2015 through November 2, 2015) | $    2,457,944.35 | $    2,455,150.04 |
| Scenario 2 | MESA, LIFETIME VALUE, ROXSAN (Fill Dates:  August 2015 through September 2016) | $  13,352,854.81 | $  13,365,055.77 |
| Scenario 3 | MESA, LIFETIME VALUE, ROXSAN, RX UNLIMITED (Fill Dates:  August 2015 through September 2016) | $  46,152,164.63 | $  46,166,104.19 |

19.     My name is Donald Lochabay, Jr., my date of birth is December 11, 1965, and my address is 6513 Riverhill Drive, Plano, Texas 75024.  I declare under penalty of perjury that the foregoing is true and correct. Executed in Dallas, TX.

_____
Donald Lochabay, Jr.

**DECLARATION OF DONALD LOCHABAY, JR. IN SUPPORT OF VICTIM IMPACT STATEMENT OF ILWU-PMA WELFARE PLAN**
*USA v. Charles Ronald Green, Jr, Melinda Elizabeth Green (USDC Southern District of California # 3:20CR01566-DMS)*

**Attachment A**



# Donald E. Lochabay, Jr., CMA, CVA

Managing Director – Alvarez & Marsal
dlochabay@alvarezandmarsal.com

Don Lochabay, a Managing Director with Alvarez & Marsal Disputes & Investigations, specializes in financial, economic, and accounting issues related to disputes and investigations. Mr. Lochabay is an expert in damages and causation analyses, complex data analysis, discovery, compliance monitoring, and forensic investigations. His experience includes both expert and privileged consulting roles in the healthcare, insurance, financial institutions, aerospace, government contracts, and other industries.  He has testified in matters in State and Federal courts and arbitration.

Mr. Lochabay's clients have included internal and outside counsel, insurance companies, health care providers, aerospace companies, electronics and design companies, chemical companies, committees of counsel to class action litigation, governmental agencies, financial institutions, construction contractors, and others.

## *Commercial Litigation*

- Assisted counsel in a variety of commercial litigation matters. Expertise includes breach of contract, lost profits, loss of inventory value, business interruption, business valuation, commercial lending, and performance delays and disruption.

- Assisted counsel with discovery including the development of document and electronic data requests and interrogatories.

- Performed extensive fact-finding, financial analysis, and economic modeling.

- Performed analyses based on a variety of information sources such as financial statements, bank and other account statements, general ledger, contracts, other specialized reports, and electronic transactional data as well as interviews with key personnel.

- Efforts have frequently culminated in expert reports, depositions, development of demonstrative exhibits, and expert testimony.

- Assisted counsel with various other topics such as piercing the corporate veil, asset tracing, and class action administration.

2100 Ross Avenue
21st Floor
Dallas, TX 75201
Tel: (214) 438-8440
Cell: (214) 394-4289
Fax: (214) 438-1006

**Certifications**

Certified Management Accountant

Certified Valuation Analyst

**Professional History**

Navigant Consulting
(2004 – 2007)

Tucker Alan Inc.
(1994 – 2004)

Peterson Consulting
(1988 – 1994)

**Professional Affiliations**

Institute of Management Accountants

National Association of Certified Valuators and Analysts

American Bar Association, Health Law and Litigation Sections and Expert Witness Committee

**Education**

Baylor University, Bachelor of Business Administration - Finance

Donald E. Lochabay, Jr.

### *Health Care Provider Contract Disputes*

- Evaluated damages related to alleged breach of physician employment agreement, which included assessment of group and individual physician billings and profitability.

- Evaluated lost profits to a large physician group related to allegations of breach of contract, breach of fiduciary duty, and fraud by a member physician.

### *Medicare Advantage Disputes*

- Assisted Medicare Advantage Organization in coordination with DOJ prosecution of network physician for improper coding.

- Analyze enrollment data, encounter data, and Risk Adjustment Processing System (RAPS) data.

- Analyze National Drug Code (NDC), diagnosis code, and procedure code data.

- Profile physician coding practice to benchmarks.

### *Pharmaceutical Litigation*

- Assisted counsel on disputes alleging improper reimbursement of pharmaceutical claims.

- Evaluated claims adjudication outcomes of major U.S. pharmacy benefit manager.  Quantified false claims and financial impact of improper adjudication.

- Evaluated contractual adjudication of pharmacy claims by pharmacy benefit managers.  Calculated financial impact of improper adjudication.

- Conducted complex eligibility data analysis across multiple pharmacy benefit manager and State Medicaid data sets.

- Evaluated pharmacy related damages to state Medicaid program.

- Analyzed cost reporting of pharmaceutical manufacturer and calculated false claims and financial impact of improper reporting.

- Analyzed pharmaceutical rebates and chargebacks as well as impact to pharmacy claim reimbursement.

Donald E. Lochabay, Jr.

### *Healthcare Insurance Class Action Defense*

- Assisted major healthcare insurance companies in defense of class action litigation relating to managed care.

- Assessed all major functions of managed care organizations as well as performing an evaluation of the various managed care products offered by each company.

- Reviewed and compiled an historical overview of the evolution of managed care in the U.S., focusing on the types of products and specific managed care tools targeted in class action complaint.

- Researched the nature of healthcare acquisition in the U.S. Assessed the role of employers and brokers, as well as individual members, in the purchase of health insurance.

- Acquired massive volumes of healthcare claims data (more than 1 billion claims) from various systems and managed care organizations.

- Developed standardized analytical databases that allowed prompt queries and direct comparability across systems and defendants.

- Developed and performed queries to support joint defense counsel, client personnel, and various experts and consultants.

- Conducted liability and damages analyses based on financial information and electronic data (included membership files, provider files, claims and encounter data, and miscellaneous other data types).

- Evaluated issues related to following areas: information systems, capitated and non-capitated products, staff model HMOs, IPAs, TriCare, FEP and SEP products, utilization management and review, medical management, membership benefits and policy, appeals and grievances, physician contracting, large group sales and national contracts, underwriting, finance, accounting, actuarial, and HEDIS reporting.

- Developed expert testimony and exhibits relating to liability and damages.

### *Healthcare Claims Processing Audits and Assessments*

- Assisted counsel on a number of disputes alleging improper claims adjudication and payment.

- Reviewed opposing experts' analyses and developed rebuttal analyses and testimony.

- Utilized valid statistical sampling technique to conduct independent review of claims adjudication and payment.

Page 3

Donald E. Lochabay, Jr.

- Acquired and analyzed relevant electronic data extracts, including membership files, benefit plan logic, certificate of coverage files, provider files, fee schedules, and claims adjudication data.

- Evaluated allegations such as duplicate payment, non-covered services, provider discount errors, improper fee schedules, slow payment, improper denials, and incorrect coordination of benefits, among others.

### State Healthcare Litigation

- Assisted many states in litigation with the tobacco industry. Analyzed healthcare damages and developed various damage models.

- Assisted in responding to defendants' discovery requests related to both electronic healthcare claims data and massive document production.

- Assisted counsel in responding to motions filed by defendants regarding compliance with discovery requirements. Provided expert testimony in hearings.

- Performed healthcare claims analysis with electronic claims data. Downloaded, converted, and analyzed billions of claims.

- Assisted with depositions and trial strategy, testimony and exhibits.

### Healthcare Provider Billing and Compliance

- Assisted a large national sub-acute care services firm in assessing compliance with Medicare guidelines for the billing of durable medical equipment.

- Conducted interviews and performed fact-finding at many service delivery points.

- Analyzed delivery and billing systems, including transaction documentation and electronic billing systems.

### Other Health Insurance Litigation

- Assisted more than 20 health insurance plans nationally in a review of expenditures to support damage calculations in complex litigation.

- Reviewed the evolution of corporate structure in order to thoroughly quantify damages over time.

- Evaluated multiple healthcare expenditure damages models.

- Reviewed Annual Statements submitted to Departments of Insurance, financial statements, and various other sources of financial data.

Donald E. Lochabay, Jr.

- Analyzed financial data to quantify healthcare expenditures for various products or funding sources, including: traditional indemnity and managed care products, Medicaid, Medicare Parts A and B, Federal Employee Program (FEP), TriCare, Workers' Compensation, Dental, National Accounts, Host Accounts, Self-funded-products, and specialized products for children.

- Identified relevant healthcare claims databases.

- Reviewed database file layouts and data dictionaries.

- Coordinated the extraction of hundreds of millions of claims records from numerous claims files.

- Developed and reviewed queries of claims data by category of service, ICD-9 diagnosis code, year, and product.

- Assessed issues related to the following functional areas:  Accounting, Actuarial, Finance, Fraud Investigation, Health Affairs, Information Systems, Internal Audit, Provider Audit, Recoveries / Settlements, Risk Sharing, Stop-Loss, Third Party Liability / Other Party Liability, and Underwriting.

### *Financial Institutions*

- Performed account tracing and reconciliation of debit card programs, including analyzing multiple years of electronic data totaling more than $20 billion in transactions of all types.

- Reviewed and analyzed accounting workpapers and reconciled to transaction level electronic data.

- Presented results of account tracing and reconciliation to Court in deposition and live testimony.

- Performed institutional and loan reviews to assist counsel in director and officer liability and accounting malpractice litigation.

- Evaluated loan underwriting, loan loss reserves, and policy and procedure compliance.

- Reviewed audit workpapers for reasonableness, assessed loan ratings, and recalculated appropriate loan loss reserves for loan portfolio.

- Performed damage analyses for both director and officer liability and accounting malpractice litigation.

- Assisted a State Attorney General and State Banking Department by performing compliance testing on a statistically valid sample of a sub-prime lender's mortgage loans.

Donald E. Lochabay, Jr.

- Conducted periodic compliance reviews and issued expert reports.

### *Fraud Investigations*

- Assisted a State Attorney General with investigation into the pricing of products sold to public schools in the state.

- Assisted major hotel operator investigate large cash embezzlement at large hotel.

- Investigated banking operations and transactional history of debit card program at a bank.  Investigated alleged $10 million fraud by reconciling multiple years of transactions across many program accounts.

- Investigations have included review of bid documents, contracts, accounting information, and other business records.

- Utilized electronic transactional data analysis to identify and quantify the impact of fraudulent activities.

- Prepared expert reports and provided sworn testimony.

- Assisted counsel with drafting of a settlement agreement.

### *Intellectual Property*

- Involved in various intellectual property matters including disputes related to patents, copyrights, and trade secrets.  These matters have included aerospace manufacturing, battery technology, software applications, and various consumer products.

- Calculated damages using reasonable royalty methodology addressing issues such as hypothetical negotiation and Georgia-Pacific factors.

- Evaluated lost profits including analyzing markets, competitors, revenues, costs, pricing, profitability, product features and differentiation, infringement period, cost of capital, and appropriate discount rates.

- Performed rebuttal analysis of patent infringement claims including damages analysis and evaluation of technology, market conditions, and comparable products.

- Assisted counsel in assessing the value of an internally developed technology and associated trade secrets, patents, and know-how in order to evaluate technology transfer agreement.

- Evaluated manufacturing processes and cost savings and evaluated the market in which the technology would be utilized.

- Performed research on alternative technologies.

Donald E. Lochabay, Jr.

- Conducted research into related and competing product royalty rates.

- Evaluated the separate components of the technology that included certain equipment patents and trademarks as well as significant process trade secrets.

### *Post Acquisition Disputes*

- Assisted counsel and other clients with various disputes involving company acquisitions.

- Evaluated pre- and post-acquisition accounting issues to quantify purchase price adjustments.

- Reviewed the actual accounting treatment for net assets as of the acquisition date and reconciled detailed accounting records with the Closing Statement of Net Assets and other program documents.

- Evaluated post-acquisition earn-out provisions and performance in order to quantify damages.

- Assessed market value determinations in order to quantify damages in failed company acquisition.

- Analyzed potential legal malpractice damages related to company acquisitions.

- Reviewed and evaluated the historical accounting practices of the acquired company and performed a comprehensive review of Generally Accepted Accounting Principles (GAAP) for select transactions under long-term contract accounting.

- Calculated lost profits associated with failed company acquisition.

### *Aerospace and Government Contracts*

- Assisted many clients with requests for equitable adjustment, changed work claims, bid protests, and various compliance matters.

- Quantified the impact of constructive and formal changes.

- Analyzed various accounting and performance records to assess issues such as cost growth and schedule extension.

- Quantified cost and pricing impacts such as increased scope of performance, loss of efficiency, program delay, and volume variances.

- Estimated impacts including discrete cost increases, core team extension, rate escalation, unabsorbed overhead, and loss of productivity.

Donald E. Lochabay, Jr.

- Prepared and reviewed termination settlement proposals.

- Reviewed cost accounting records to evaluate costs incurred.

- Assessed subcontract claims.

- Evaluated termination inventory.

- Reconciled accounting records and prepared termination claim forms.

- Assisted clients in the conversion of terminations for default to terminations for convenience.

### *Construction*

- Prepared construction claims quantifying the impact of changed work, delay, acceleration, and disruption.

- Reviewed opposing expert reports and developed rebuttal opinions.

- Evaluated the reasonableness of both cost and schedule baselines.

- Evaluated causal changes, which led to cost growth on a contract, and quantified the impacts of such changes.

- Performed detailed cost growth analyses utilizing the cost and performance records utilized by construction contractors.

- Prepared construction claims for increased direct labor effort, core team extension, labor rate and material escalation, extended overhead, and loss of efficiency.

### *Insurance Claims Evaluation*

- Assisted counsel and insurance companies in the defense of many insurance claims.

- Evaluated business interruption (lost profits) claims, claims for loss of inventory or other contents, and supported financial motive for insurance fraud.

- Assessed the reasonableness of various claims, including review of accounting and other documentation.

- Interviewed relevant personnel and claims adjusters.

- Conducted necessary site visits.

- Prepared financial analysis and issued expert reports.

- Performed cash flow analysis, reconstructed balance sheets and income

Donald E. Lochabay, Jr.

statements, traced cash and other assets.

### Environmental Clean-up

- Assisted counsel in cost determination related to site clean-up activities.

- Evaluated various types of clean-up costs and determined proper assignment of costs to various parties.

- Developed cost allocation models and developed expert reports.

### Testimony Jurisdictions

- U.S. District Courts – New York and Texas

- State District Courts – Texas and Arizona

- State Supreme Court – New York

- Armed Services Board of Contract Appeals

- Arbitrations

**EXHIBIT 1**

*ILWU Welfare Plan Restitution Claim*
*Overview of Compound Claims Data for Plan (All Pharmacies)*

| Fill Date | Distinct Claims (a) | Total Claims | | Paid Claims (b) | | Reversed Claims (c) | | Rejected Claims (d) | |
| | | PBM Adjudicated Amount (CLM APP DUE AMT) | Plan Adjudicated Amount (CLM CLR DUE AMT) | PBM Adjudicated Amount (CLM APP DUE AMT) | Plan Adjudicated Amount (CLM CLR DUE AMT) | PBM Adjudicated Amount (CLM APP DUE AMT) | Plan Adjudicated Amount (CLM CLR DUE AMT) | PBM Adjudicated Amount (CLM APP DUE AMT) | Plan Adjudicated Amount (CLM CLR DUE AMT) |
|---|---|---|---|---|---|---|---|---|---|
| 8/1/15 - 12/31/15 | 11,385 | $ 54,060,383.30 | $ 53,990,277.43 | $ 22,989,063.31 | $ 22,943,765.61 | $ 23,288,474.90 | $ 23,368,447.72 | $ 31,071,319.99 | $ 31,046,511.82 |
| 1/1/16 - 9/30/16 | 25,542 | 147,658,370.69 | 150,221,937.87 | 74,550,011.83 | 74,610,797.75 | 40,803,336.55 | 40,852,905.60 | 73,108,358.86 | 75,611,140.12 |
| **Total** | **36,927** | **$ 201,718,753.99** | **$ 204,212,215.30** | **$ 97,539,075.14** | **$ 97,554,563.36** | **$ 64,091,811.45** | **$ 64,221,353.32** | **$ 104,179,678.85** | **$ 106,657,651.94** |

| *PBM Paid Amount as a % of Plan Paid Amount (8/15 - 9/16)* | **99.98%** |
|---|---|

**Notes:**

(a) A claim is identified as a unique combination of "MEMBER_ID" and "CLAIM_NUMBER".

(b) A paid claim is identified with a "CLAIM_STATUS_ID" of "P" and is not offset by a reversal "CLAIM_STATUS_ID" = "X".  Reflects amounts paid and not reversed or rejected.

(c) A reversed claim is identified with a "CLAIM_STATUS_ID" of "X".  Reflects adjudicated amounts that were subsequently reversed.  Because the adjudicated amount for reversals has a corresponding
    record that exactly offsets these amounts, these fields do not affect the amounts in the "Totals Claims" columns of this schedule.

(d) A rejected claim is identified with a "CLAIM_STATUS_ID" of "R".  Reflects claims that were rejected and not paid.

EXHIBIT 2

*ILWU Welfare Plan Restitution Claim*
*Summary of Compound Claims for Plan (Paid Claims Only - All Pharmacies)*

**Amount Plan Paid to PBM**

| Fill Date | # of Claims | Claim Total Ingredient Cost (CLM CLR INGRED COST PAID) | Dispensing Fee (CLR DISPENSING FEE) | Sales Tax (CLM CLR SALES TAX PAID) | Patient Copay (CLM APP PATIENT PAY AMT) | Plan Net Paid Amount (CLM CLR DUE AMT) (a) |
|---|---|---|---|---|---|---|
| | | [A] | [B] | [C] | [D] | [E] = (A + B + C - D) |
| 8/1/15 - 12/31/15 | 8,187 | $ 22,897,518 | $ 54,434 | $ - | $ 8,187 | $ 22,943,766 |
| 1/1/16 - 9/30/16 | 15,957 | 74,516,438 | 110,316 | - | 15,951 | 74,610,798 |
| **Total** | **24,144** | $ **97,413,957** | $ **164,750** | $ **-** | $ **24,138** | $ **97,554,563** |

**Amount PBM Paid to the Pharmacy**

| Fill Date | # of Claims | Claim Total Ingredient Cost (CLM APP INGRED COST PAID) | Dispensing Fee (CLM APP DISPENSING FEE) | Sales Tax (CLM CLR SALES TAX PAID) | Patient Copay (CLM APP PATIENT PAY AMT) | PBM Net Paid Amount (CLM APP DUE AMT) |
|---|---|---|---|---|---|---|
| | | [A] | [B] | [C] | [D] | [E] = (A + B + C - D) |
| 8/1/15 - 12/31/15 | 8,187 | $ 22,943,032 | $ 54,218 | $ - | $ 8,187 | $ 22,989,063 |
| 1/1/16 - 9/30/16 | 15,957 | 74,451,066 | 114,897 | - | 15,951 | 74,550,012 |
| **Total** | **24,144** | $ **97,394,099** | $ **169,115** | $ **-** | $ **24,138** | $ **97,539,075** |

**Note:**
(a)  There are 5 claims where the Ingredient Cost + Dispensing Fee + Sales Tax - Copay does not equal Claim Total Paid Amount.

**EXHIBIT 3**

*ILWU Welfare Plan Restitution Claim*

*Claim Reversal Example*

**Example Claim Reversal**

| CLAIM NUMBER | CLAIM SEQ NUMBER | CLAIM STATUS ID (P = Paid, X= Reversal) | MEMBER ID | FILLED DATE | RX NUMBER | PHARMACY NCPDP ID | PHARMACY NAME | PBM Net Paid Amount (CLM APP DUE AMT) | Plan Net Paid Amount (CLM CLR DUE AMT) |
|---|---|---|---|---|---|---|---|---|---|
| **Original Adjudication of Claim** | | | | | | | | | |
| 152243885658002 | 6 | P (Paid) | 6240720HJ01 | 8/12/2015 | 000000111480 | 5630771 | MESA PHARMACY VII | $ 14,096.14 | $ 14,096.14 |
| **Claim Reversal** | | | | | | | | | |
| 152243885658002 | 6 | X (Reversal) | 6240720HJ01 | 8/12/2015 | 000000111480 | 5630771 | MESA PHARMACY VII | (14,096.14) | (14,096.14) |
| **Adjusted Claim Payment** | | | | | | | | | |
| (d)  A rejected claim | 8 | P (Paid) | 6240720HJ01 | 8/12/2015 | 000000111480 | 5630771 | MESA PHARMACY VII | 10,925.50 | 10,925.50 |

|  | Net Paid Amount | $ 10,925.50 | $ 10,925.50 |
|---|---|---|---|

**EXHIBIT 4**

*ILWU Welfare Plan Restitution Claim*
*Scenario 1:  Net Payments for Claims Identified in Melinda Green Affidavit*

| Fill Month | Green Exhibit A (MESA Pharmacy Claims) | | | Green Exhibit B (Lifetime Value Pharmacy Claims) | | | All Exhibits | | |
|---|---|---|---|---|---|---|---|---|---|
| | # of Claims | PBM Net Paid Amount (CLM APP DUE AMT) | Plan Net Paid Amount (CLM CLR DUE AMT) | # of Claims | PBM Net Paid Amount (CLM APP DUE AMT) | Plan Net Paid Amount (CLM CLR DUE AMT) | # of Claims | PBM Net Paid Amount (CLM APP DUE AMT) | Plan Net Paid Amount (CLM CLR DUE AMT) |
| | [A] | [B] | [C] | [D] | [E] | [F] | [G = A + D] | [H = B + E] | [I = C + F] |
| 2015-08 | 87 | $ 736,008.54 | $ 736,008.54 | - | $ - | $ - | 87 | $ 736,008.54 | $ 736,008.54 |
| 2015-09 | 48 | 492,199.98 | 492,199.98 | - | - | - | 48 | 492,199.98 | 492,199.98 |
| 2015-10 | - | - | - | 129 | 1,224,587.72 | 1,221,808.74 | 129 | 1,224,587.72 | 1,221,808.74 |
| 2015-11 | - | - | - | 1 | 5,148.11 | 5,132.78 | 1 | 5,148.11 | 5,132.78 |
| **Total** | **135** | **$ 1,228,208.52** | **$ 1,228,208.52** | **130** | **$ 1,229,735.83** | **$ 1,226,941.52** | **265** | **$ 2,457,944.35** | **$ 2,455,150.04** |

**General Notes:**

1. "Committed Date" between 8/1/2015 and 9/30/2016.  Four claims included in Melinda Green's affidavit had a fill date prior to August 1, 2015. For purposes of this declaration, these claims have been excluded from the quantification.
2. Exhibit A to Melinda Green's Affidavit matched to OptumRx Claims associated with NCPDP "5630771" and Pharmacy Name "MESA PHARMACY VII".
3. Exhibit B to Melinda Green's Affidavit matched to OptumRx Claims associated with NCPDP "5648083" and Pharmacy Names "LIFETIME VALUE PHARMACY" and "LVRX III".

EXHIBIT 5

### ILWU Welfare Plan Restitution Claim
### Scenario 2:  Net Payments to Select Pharmacies
*(LIFETIME VALUE PHARMACY, LVRX III, MESA PHARMACY VII,*

*ROXSAN PHARMACY, ROXSAN PHARMACY INC)*

| Fill Month | # of Claims | PBM Net Paid Amount (CLM APP DUE AMT) | Plan Net Paid Amount (CLM CLR DUE AMT) |
|---|---|---|---|
| 2015-08 | 97 | $ 754,607.80 | $ 754,607.80 |
| 2015-09 | 69 | 582,422.71 | 582,422.71 |
| 2015-10 | 192 | 2,192,084.33 | 2,186,844.98 |
| 2015-11 | 28 | 417,133.72 | 415,890.62 |
| 2015-12 | 3 | 2,113.98 | 2,108.03 |
| 2016-01 | 3 | 2,116.98 | 2,111.19 |
| 2016-02 | 5 | 3,528.30 | 3,518.65 |
| 2016-03 | 55 | 793,805.02 | 791,440.51 |
| 2016-04 | 72 | 1,092,050.04 | 1,088,795.57 |
| 2016-05 | 121 | 1,502,723.06 | 1,501,707.91 |
| 2016-06 | 179 | 2,098,842.72 | 2,107,548.34 |
| 2016-07 | 92 | 1,054,926.11 | 1,059,279.24 |
| 2016-08 | 289 | 2,787,890.63 | 2,799,591.82 |
| 2016-09 | 52 | 68,609.41 | 69,188.40 |
| **Total** | **1,257** | **$ 13,352,854.81** | **$ 13,365,055.77** |

**General Note:**
Claims identified with fill dates between 8/1/15 and 9/30/16.
Pharmacies identified as follows:

| NCPDP | Pharmacy Name |
|---|---|
| 5630771 | MESA PHARMACY VII |
| 5632321 | LIFETIME VALUE PHARMACY |
| 5648083 | LIFETIME VALUE PHARMACY |
| 5648083 | LVRX III |
| 0530255 | ROXSAN PHARMACY |
| 5656701 | ROXSAN PHARMACY INC |

**EXHIBIT 6**

### *ILWU Welfare Plan Restitution Claim*
### *Scenario 3:  Net Payments to Select Pharmacies*

*(LIFETIME VALUE PHARMACY, LVRX III, MESA PHARMACY VII,*
*ROXSAN PHARMACY, ROXSAN PHARMACY INC, RX UNLIMITED PHARMACY)*

| Fill Month | # of Claims | PBM Net Paid Amount (CLM APP DUE AMT) | Plan Net Paid Amount (CLM CLR DUE AMT) |
|---|---|---|---|
| 2015-08 | 97 | $ 754,607.80 | $ 754,607.80 |
| 2015-09 | 69 | 582,422.71 | 582,422.71 |
| 2015-10 | 212 | 2,509,356.55 | 2,503,360.26 |
| 2015-11 | 199 | 3,029,061.85 | 3,021,592.80 |
| 2015-12 | 271 | 4,053,631.24 | 4,043,966.99 |
| 2016-01 | 156 | 2,278,634.55 | 2,273,204.74 |
| 2016-02 | 172 | 2,478,826.00 | 2,472,961.52 |
| 2016-03 | 321 | 4,627,874.96 | 4,616,395.37 |
| 2016-04 | 334 | 4,969,417.47 | 4,957,151.24 |
| 2016-05 | 386 | 5,371,573.34 | 5,375,005.99 |
| 2016-06 | 424 | 5,630,774.83 | 5,655,426.28 |
| 2016-07 | 316 | 4,368,190.22 | 4,387,742.02 |
| 2016-08 | 469 | 5,429,183.70 | 5,453,078.07 |
| 2016-09 | 52 | 68,609.41 | 69,188.40 |
| **Total** | **3,478** | **$ 46,152,164.63** | **$ 46,166,104.19** |

**General Note:**

Claims identified with fill dates between 8/1/15 and 9/30/16.

Pharmacies identified as follows:

| NCPDP | Pharmacy Name |
|---|---|
| 5630771 | MESA PHARMACY VII |
| 5632321 | LIFETIME VALUE PHARMACY |
| 5648083 | LIFETIME VALUE PHARMACY |
| 5648083 | LVRX III |
| 0530255 | ROXSAN PHARMACY |
| 5656701 | ROXSAN PHARMACY INC |
| 0552554 | RX UNLIMITED PHARMACY |